**TALLY–HO, INC., A Florida Corporation, Plaintiff–Counter–Defendant–Appellant,**

v.

**COAST COMMUNITY COLLEGE DISTRICT, Defendant–Counter–Plaintiff–Appellee.**

No. 88–5594.

United States Court of Appeals, Eleventh Circuit.

Dec. 6, 1989.

As Amended Jan. 19, 1990.

Bret Shawn Clark, Miami Shores, Fla., for plaintiff-counter-defendant-appellant.

Richard B. Adams, Adams, Hunter, Angones, Adams, Adams & McClure, Miami, Fla., Harold L. Novick, Larson & Taylor, Douglas E. Jackson, S. Arlington, Va., for defendant-counter-plaintiff-appellee.

Before CLARK and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Appellant Tally–Ho, Inc. appeals an order denying it preliminary injunctive relief on its complaint of trademark infringement and unfair competition against Coast Community College District under the Lanham Act, 15 U.S.C.A. § 1051 *et seq.* (1976), and FLA.STAT.ANN. § 495.011 *et seq.* (West 1988). Because the district court misapplied the law when it denied Tally–Ho's motion for a preliminary injunction we exercise our broad powers of review, *see E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1529 (11th Cir.1985), and reverse and remand.

I. BACKGROUND

A. Facts

Tally–Ho, Inc. (Tally–Ho) produces and distributes a program entitled "You and the Law" that has been broadcast in South

Florida since 1984 on a public television station, WLRN, and on a cable television system. The program is hosted by a moderator who discusses with guests topics of current interest in the law. Tally–Ho registered its "You and the Law" trademark with the State of Florida on December 20, 1985, and its certificate indicates the mark was first used in January, 1984.

Coast Community College District (Coast) is one of the nation's largest producers and distributors of educational telecourses. It distributes "You and the Law," a series of twenty-six videotaped lectures and discussions concerning various legal issues and concepts. Coast produced and copyrighted[1] this series in 1980 and 1981. Coast, however, has not registered the "You and the Law" trademark under state or federal trademark statutes. Following negotiations, in February 1984, the State of Florida and Coast entered a licensing contract which gave the state the right to use, broadcast and distribute Coast's video lecture series. The license also permitted the state to duplicate and distribute the series by any means. The state included the series in a list of video courses available to community colleges. The video series was first shown during the first week of January 1984. Use of the telecourse was very limited. The video series was shown only at Daytona Beach Community College, Valencia Community College and Florida Keys Community College. None of these uses were in the same viewer market in which Tally–Ho's programming was shown.

Tally–Ho became aware of Coast's video series when a local community access cable channel, MDTV, advertised that it was going to present the Coast "You and the Law" series in upcoming broadcasts. MDTV acquired the Coast series from the state after learning about it from WLRN. Coast had not previously broadcast its courses over any television systems anywhere in Florida.

B. District Court Proceedings

In March 1988, Tally–Ho filed a two-count complaint for declaratory and permanent injunctive relief and for damages under federal and state trademark and unfair competition laws.[2] On June 1, 1988, Coast answered and filed a four-count counter-claim. Coast also sought declaratory and permanent injunctive relief and damages for Tally–Ho's alleged violation of federal and state unfair competition laws.[3] In June 1988, Tally–Ho filed a motion seeking preliminary injunctive relief to prevent Coast from broadcasting its course to the general public.

Following an evidentiary hearing, the district court issued an order denying Tally–Ho's motion for a preliminary injunction. The court held that Coast was the first to "use"[4] the mark in Florida based on an October 4, 1983, internal Florida Department of Education memorandum indicating approval for a proposed contract with Coast. The district court rejected Tally–Ho's argument that Coast relinquished its right by granting to the Department of Education a "naked license" to use the mark. The court also rejected Tally–Ho's arguments that Coast's prior use was in a substantially different geographic market than the market occupied by Tally–Ho, and that Coast could not support its claim of

---

1. This is a trademark case and whether and when Coast registered its copyright is legally irrelevant for trademark purposes.

2. Count I alleges service mark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq.,* and FLA.STAT.ANN. § 495.131 (West 1988) (infringement). Count II alleges unfair competition in violation of federal and state law.

 The Lanham Act infringement claim has no merit. Tally–Ho has not registered its trademark under 15 U.S.C.A. §§ 1051–72, and consequently is not entitled to relief under 15 U.S.C.A. § 1114.

3. Counts I and II allege unfair competition under the Lanham Act, 15 U.S.C. 1125(a), and the common law, respectively. Count III seeks a declaration that Tally–Ho's state registration is invalid. Count IV alleges violation of Florida's antidilution statute, FLA.STAT. § 495.151 (1988).

4. FLA.STAT.ANN. § 495.011(11) states that "a service mark shall be deemed to be 'used' in this state when it is used or displayed in the sale or advertising of services in this state or in connection with services rendered in this state." FLA. STAT.ANN. § 495.011(11) (West 1988).

1022

superior right because it could not show that its "You and the Law" telecourse was in direct competition with Tally–Ho's program. The court specifically held that Coast's "prior" educational use of the mark gives it the right to use the mark in the "related" broadcast market and that Tally–Ho was not entitled to a preliminary injunction because "the court does not find [Tally–Ho] to have a substantial likelihood of success on the merits." [5]

Tally–Ho filed a notice of appeal and moved for a preliminary injunction pending appeal. The district court granted the motion in part and enjoined Coast's broadcast of its program for twenty days. After this court denied Tally–Ho's motion to extend the injunction, Coast and the Dade County Attorney informed Tally–Ho that the broadcast of the telecourse would begin on July 25, 1988. Tally–Ho filed a motion for reconsideration to this court for an injunction pending appeal, which was denied.

## II. DISCUSSION

■ The sole issue on appeal is whether the district court erred in denying Tally–Ho's motion for a preliminary injunction. To prevail on its motion for a preliminary injunction, Tally–Ho has the burden of proving: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) its own injury outweighs the injury to Coast; and (4) the injunction would not disserve the public interest. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The district court held that Tally–Ho failed to meet its burden on each of these elements.

■ We review the district court's denial of a preliminary injunction to determine whether that court abused its discretion. *Remy Martin*, 756 F.2d at 1529. However, if the trial court has misapplied the law, we must review and correct the

error without deference to that court's determination of the legal issue. *Id.* Factual findings will be reversed only if clearly erroneous. *Id.* Our review of the district court opinion reveals two errors of law. First, the district court erred when it determined that Coast was not required to show actual competition with Tally–Ho in order to successfully assert a prior use defense. Second, the district court ignored the geographic component of trademark protection that gives Coast priority only in limited geographic and product markets in which it did not compete with Tally–Ho.

At the outset, it is important to note that neither Tally–Ho nor Coast has registered the "You and the Law" trademark under the *federal* registration system. Tally–Ho has registered its mark under the Florida statute while Coast has not filed on any registry. Thus, neither party can claim nationwide protection under the federal statute. Instead, Coast has only common law trademark protection while Tally–Ho has common law trademark protections in addition to those provided under the Florida statute. As discussed below, because the Florida statute provides little additional protection beyond that provided at common law, this action is almost exclusively governed by common law trademark principles.

### A. Common Law Trademark Principles

■ Because of the importance of common law trademark principles under Florida's statutory system, we first identify the basic concepts necessary to determine the extent of Coast's common law trademark rights. Under the common law, trademark rights are appropriated only through actual prior use in commerce. *United States v. Steffens*, 100 U.S. 82, 25 L.Ed. 550 (1879); J. McCarthy, *Trademarks and Unfair Competition* § 16:1, at 720 (2d Ed.1984). Trademark ownership is always appurtenant to commercial activity. Thus, actual and continuous use [6] is re-

---

5. The district court's opinion also concludes summarily that Tally–Ho has not demonstrated entitlement to the issuance of a preliminary injunction because it could not meet the other prerequisites for injunctive relief—namely, a likelihood of irreparable injury, a balance of

harms weighing in favor of Tally–Ho, and absence of disservice to the public interest.

6. Rights in a mark can be lost through abandonment, non-use, or a naked license without control over product quality. In fact, as an alterna-

quired to acquire and retain a protectible interest in a mark.

■ Ownership of a distinctive mark is further limited by priority of use. The first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark in that market. *Junior Food Stores of W. Fla. v. Junior Food Stores, Inc.,* 226 So.2d 393, 396 (Fla.1969). Junior users, who subsequently use the same or similar mark on similar products or services, may also establish common law rights to perhaps even the same mark provided there is no competitive overlap with the senior user. *Id.* at 398. The senior user, however, may enjoin such uses that infringe upon its prior rights. The extent of the senior user's rights in the mark are also governed by a few additional principles.

■ The senior user's rights may extend into uses in "related" product or service markets (termed the "related goods" doctrine). J. McCarthy, *supra,* § 24–1 to –12. Thus, an owner of a common law trademark may use its mark on related products or services and may enjoin a junior user's use of the mark on such related uses. The doctrine "gives the trademark owner protection against the use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Id.* at 166. In this case, the district court concluded that Coast's use of its telecourse in the cable broadcast market is "related" to use in the community college educational telecourse market.

■ A senior user's rights also are geographically limited to only those territories in which it actually uses its mark or into which it might naturally expand (the "zone of natural expansion"). For instance, if a senior user cannot prove that it directly competes in a geographic market with a junior user, it can still demonstrate that the junior user is operating in a market into which the senior user should be allowed to expand at a later time.

### B. Florida's Trademark Act

■ Tally–Ho's preliminary injunction is based, in part, on Coast's alleged violation of Florida's Trademark Act which provides for state trademark registration.[7] In Florida, registration under the trademark statute is "prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in this state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein." FLA. STAT.ANN. § 495.061(2) (West 1988);[8] *Abner's Beef House Corp. v. Abner's Int'l, Inc.,* 227 So.2d 865, 866 (Fla.1969). The Florida Trademark Act however explicitly preserves common law rights in marks acquired in good faith. FLA.STAT.ANN. § 495.161 (West 1988) ("Nothing herein shall adversely affect or diminish the rights or the enforcement of rights in marks acquired in good faith at any time at common law."). Thus, a registered mark has prima facie validity but is subject to another's bona fide use of the same or similar mark under the common law. The statute therefore does not abrogate the common law rights of owners of marks. Instead, a registrant's rights are limited by

tive ground for relief Tally–Ho contends that even if Coast has superior rights to the "You and the Law" mark, it forfeited its rights by granting a "naked license" to the Department of Education. We believe the district court correctly rejected this argument.

7. FLA.STAT.ANN. §§ 495.011–.171 (West 1988).

8. Subsection (2) provides:
 Any certificate of registration issued by the department of state under the provisions hereof or a copy thereof duly certified by the department of state shall be admissible in evidence as competent and sufficient proof of the registration of such mark in any action of judicial proceedings in any court of this state, and shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and the registrant's exclusive right to use the mark in this state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

the bona fide rights of common law users. In this action, Tally–Ho's registration is prima facie evidence of its right to use the "You and the Law" trademark in Florida subject only to Coast's common law rights.

The Act permits a registrant to sue for *infringement* under FLA.STAT.ANN. § 495.131 (West 1988) [9] and pursue remedies under FLA.STAT.ANN. § 495.141 (West 1988). Common law owners of unregistered marks are limited to common law remedies in infringement actions. The Florida statute also permits an *"antidilution"* claim under section 495.151.[10] This provision permits any trademark owner, whether registered or unregistered, to prohibit either a non-competitor's or competitor's use of a similar mark if there is a likelihood of injury to business reputation or dilution of the mark's distinctive quality. The antidilution statute's purpose is to prevent the weakening of a distinctive trademark.

It is critical to note the distinction between a trademark infringement action and a trademark dilution action. At common law, a trademark was intended to differentiate between different sources of competing goods. Thus, an infringement action is based on the likelihood of consumer confusion between suppliers of competing goods in the same geographic locale. In contrast, a dilution action is based on the concept that a strong trademark has value beyond its ability to distinguish a good or service's source. A strong, distinctive trademark may become a symbol of consumer loyalty and goodwill rather than merely an indicator of supplier identity. A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-competitors.[11] Thus, dilution analysis is fundamentally different from infringement analysis; the former focuses on the dilution of a mark's distinctive quality while the latter focuses on the likelihood of consumer confusion. In addition, a dilution action eliminates the requirement of competition; an infringement action does not.

C. Competition Required in an Infringement Action

▮▮▮▮ The district court relied upon a dilution theory to support its conclusion that Coast did not have to demonstrate competition in order to establish a prior use defense. In an infringement action, the

9. This section, entitled "Infringement," provides: Subject to the provisions of § 495.161, any person who shall:
(1) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this chapter on any goods or in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
(2) Reproduce, counterfeit, copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used upon or in conjunction with the sale, offering for sale, distribution or advertising in this state of goods or services;
Shall be liable in a civil action by the owner of such registered mark for any or all of the remedies provided in § 495.141, except that under subsection (2) hereof the registrant is not entitled to recover profits or damages unless the acts have been committed with knowledge that such mark was intended to be used to cause confusion or mistake or to deceive.

10. This section, entitled "Injury to business reputation; dilution," provides:
Every person, association, or union of workingmen adopting and using a mark, trade name, label or form of advertisement may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.
FLA.STAT.ANN. § 495.151 (West 1988).

11. "The underlying rationale of the dilution doctrine is that the gradual diminution or whittling away of the value of a trademark, resulting from use by another, constitutes an invasion of the senior user's property right and good will in his mark and gives rise to an independent wrong." J. McCarthy, *supra*, § 24:13, at 213.

plaintiff must initially demonstrate the right to a trademark and actual geographic and product competition with the alleged infringer. The defendant must then establish some defense, in this case priority of usage, to defeat the plaintiff's infringement claim. In establishing prior use, the defendant has essentially the same burden as the plaintiff: to prove that its competing use of the contested mark pre-dates the competitor's use. In other words, a defendant's prior use defense also requires a showing of competition.

The district court erred in failing to distinguish between an infringement action and a dilution action. The district court relied upon and misinterpreted a passage from *Abner's Beef House Corp. v. Abner's Int'l, Inc.*, 227 So.2d 865 (Fla.1969). In full, this passage states:

> F.S., Section 495.151, F.S.A., does, however, obviate the necessity in an injunction suit to enjoin a subsequent use of a similar mark that plaintiff show there is competition between the parties or a confusion as to the source of goods and services, which showing was a requisite under the common law. *See El Modello Cigar Manufacturing Co. v. Gato*, 25 Fla. 886, 7 So. 23, 6 L.R.A. 823 [1890].

*Id.* at 866. The court in *Abner's Beef House* was discussing Florida's antidilution statute, section 495.151, which by its plain language eliminates the requirement of competition in a *dilution* action.[12] The court clearly was not discussing either state statutory or common law trademark infringement actions. In fact, the passage makes apparent that the common law requires a showing of competition between the parties in an infringement action.[13] Similarly, in *American Bank v. First American Bank & Trust*, 455 So.2d 443

(Fla. 5th Dist.Ct.App.1984), the court stated:

> Because one's goodwill or reputation may be harmed by another's use of a tradename similar to that of the first, it is often stated that under most of the more recent cases actual or direct competition is no longer essential to injunctive relief from infringement of a tradename, trademark or unfair competition. However, actual or intended competition appears to be essential to potential customer confusion, when the issue is the sameness or similarity in kind of the services or goods involved (substantive scope of protection) and when the issue is the territorial scope of tradename (or mark) protection.

*Id.* at 446 n. 4 (citations omitted). As the *American Bank* court holds, the common law requirement of demonstrating actual or intended competition is still a requisite in a trademark infringement action. The proper interpretation of the Florida Trademark Act and Florida case law leads to the conclusion that a defendant in a trademark infringement action based on common law principles shoulders the same burden as the plaintiff in establishing priority of use in defending against an infringement claim. This burden includes a showing that the prior use is also a competing use. The district court's conclusion to the contrary provides defendants in infringement actions with greater protections than those provided at common law. The Florida Trademark Statute is emphatic in preserving common law trademark rights, and there is no indication that such rights were to be preserved only in the acquisition of trademarks and not in their defense.

### D. Infringement

The elements of common law and statutory trademark infringement are the

---

12. *See also Tio Pepe, Inc. v. El Tio Pepe de Miami Restaurant, Inc.*, 523 So.2d 1158, 1160 (Fla.3d Dist.Ct.App.1988) ("Under the statute, the common law requirement of establishing competition between the parties or confusion as to the source of the services has been eliminated ... thus the need to inquire into the territorial scope of the business to determine whether competition or confusion is present has also been dispensed with.") (citations omitted).

13. At common law, trademark law had no role absent competition. Unless two or more owners of similar marks competed within the same geographic market or between similar goods or services, no possibility of consumer confusion existed. Thus, there was no need for trademark protection.

same.[14] A cause of action for injunctive relief on the common law of unfair competition based on tradename or trademark infringement requires the following elements to be alleged and proved:

(1) The plaintiff first adopted and used a certain name (or mark or symbol or logo or design) in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services rendered or offered by it (or goods made or sold by it) and to distinguish them from similar services rendered or offered (or similar goods marketed) by others, and

(2) through its association with such services or goods the plaintiff's tradename (or mark, etc.) has acquired a special significance as the name of the services rendered (or goods marketed) by the plaintiff in its trade area because plaintiff's tradename (or mark, etc.)

(a) is inherently distinctive (fanciful, novel or arbitrary), or

(b) while generic, descriptive, or geographic, plaintiff's tradename (or mark, etc.) has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning as indicating, describing, identifying or denominating the plaintiff as the source of certain services (or goods), and

(3) the defendant has commenced, or intends to commence, the use of an identical or confusingly similar tradename (or mark, etc.) to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade areas in which the plaintiff has already established its tradename (or mark, etc.) and

(4) as a consequence of the defendant's action, or threatened action, customer confusion of source or as to the sponsorship of the services (or goods) offered, or to be offered, by the defendant is probable (likely) or inevitable.

*American Bank*, 455 So.2d at 445–46.

The requirements for the issuance of a preliminary injunction require that Tally–Ho demonstrate a substantial likelihood of success on the merits of its infringement claim. It therefore must establish each of these four elements. Neither party disputes that Coast's broadcast of its "You and the Law" telecourse will inevitably cause consumer confusion in the Dade County cable broadcast marketplace. Nor do the parties claim that the "You and the Law" mark is not protectible (i.e. generic, descriptive, or geographic). The central dispute is whether Tally–Ho or Coast has priority of use of the "You and the Law" mark in this particular market. The evidence compels the conclusion that Tally–Ho has priority.

The record demonstrates that Coast was the first to use the "You and the Law" trademark. However, Tally–Ho correctly asserts that Coast never used the trademark in the Dade County cable broadcast market where Tally–Ho had been broadcasting its "You and the Law" series for four years. The district court agreed with Coast that an internal Department of Education memorandum dated October 1983 provides a sufficient basis for granting Coast a statewide monopoly on the "You and the Law" trademark in both the educational community college and cable broadcast markets. The record and the case law, however, establish that, at most, Coast has common law trademark protection in very limited geographic markets and that its expansion into the Dade County market infringes on Tally–Ho's protected trademark rights.

The district court relies upon the related use doctrine to expand Coast's limited common law rights in the community college telecourse market to the cable broadcast market. Without discussion the district

---

**14.** Tally–Ho has also set forth a claim for unfair competition. The district court recognized that an unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim. *See Freedom Savings and Loan Ass'n v. Way,* 757 F.2d

1176, 1186 (11th Cir.1985). Because we conclude that Tally–Ho is entitled to a preliminary injunction on its trademark infringement claim, we need not address whether it is entitled to injunctive relief on the unfair competition claim.

court further expands Coast's common law rights to encompass the entire state of Florida through the zone of natural expansion doctrine. This holding is contrary to the principle that actual use is necessary to establish common law trademark rights. The next two sections of this opinion therefore describe the related use doctrine and the doctrine of natural expansion, and analyze the district court's reasoning.

### 1. *Related Use*

 The district court found that Coast's expansion into the broadcast market is "related to" the use of video courses in the educational telecourse market. Related goods are those that a consumer is likely to believe come from the same source and are somehow connected with a common company. "Related use" is merely a facet of the likelihood of confusion test and therefore requires an inquiry into seven factors affecting the likelihood of confusion among consumers: (1) type of trademark; (2) similarity of the two marks; (3) similarity of services; (4) identity of customers and facilities; (5) similarity of advertising; (6) intent of the alleged infringer; and (7) actual confusion. *See Freedom Savings and Loan Ass'n v. Way*, 757 F.2d 1176, 1182 (11th Cir.1985).

Tally–Ho claims that the cable broadcast market is not a related use because the cable broadcast market is a separate and distinct market from the educational telecourse market and that these markets are composed of distinct customers—that is, students versus the general viewing public. Tally–Ho further argues that it advertises its "You and the Law" program differently than Coast advertises its telecourse. Tally–Ho also asserts that it had no intent to invade Coast's telecourse markets when it began its cable broadcasts and finally that there was no actual confusion prior to Coast's entry into the broadcasting market. Thus, Tally–Ho argues that almost all of these factors favors its position that

Coast's expansion into the broadcasting market is not a "related use."

The district court concluded that the public broadcast of Coast's video courses was "complementary" with the educational use of its courses. *Freedom Savings*, 757 F.2d at 1184. Although this is one measure of relatedness, it is not the sole measure. Instead, the case law requires a more detailed approach as described above. Nevertheless, the district court's conclusion that the cable broadcast market is related to the educational telecourse market is supportable. The test for relatedness is whether consumers are likely to believe that a broadcast of "You and the Law" over a cable channel is from the same source or is somehow affiliated with Coast's educational telecourse series, "You and the Law." Under this standard, the district court's findings are not clearly erroneous. The inquiry, however, does not end at this point.

 Even assuming that Coast has common law rights in the related cable broadcast market, Tally–Ho still has a protectible trademark in the Dade County cable broadcast market because the related use doctrine expands trademark protections to uses in related product and service markets. The doctrine does not expand trademark protections to geographically remote markets. Thus, a finding of related use is not a finding of state-wide trademark protection. Instead, the related use doctrine expands trademark protections to related product or service markets in existing geographic markets.

### 2. *Zone of Natural Expansion*

 The territorial extent of trademark protection is limited to those geographic areas in which a mark is actually used in commerce and a zone of reasonable future expansion.[15] "[U]nder common law principles, the senior user of a mark cannot monopolize markets that neither his trade nor his reputation has reached." J. McCar-

---

**15.** "Under the common law, the universal rule governing tradename protection is that protection will be extended to the first appropriator of a name, *within the territorial scope of its busi-* *ness*, against subsequent use of the same or similar name by another." *Junior Food Stores*, 226 So.2d at 396 (emphasis added).

thy, *supra*, § 26:1, at 284. This "zone of natural expansion" doctrine provides the senior user with some limited "breathing space" in which to expand beyond its current actual use. J. McCarthy, *supra*, § 26:8, at 302.

> This theory has been seized upon by senior users to argue that defendant is occupying territory within its natural zone of expansion, even though it has not yet entered that market and defendant was concededly first in that remote area. In most cases, the courts have rejected this argument on the facts, narrowly defining the senior user's zone of natural expansion.
>
> If the senior user is static, and has restricted use to only one small area, such as one city, a good-faith junior user may expand into a nationwide use of the mark, subject only to an exception in the small area occupied by the senior user. However, if the senior user has constantly expanded its business by the date of the junior user's adoption of the mark, and if distances are not great, it may be that the senior user is entitled to exclusive rights in a zone of natural expansion which includes the junior user's area, even though no actual sales have yet been made in that area by the senior user.

*Id.* at 302–03 (citations omitted). The zone of natural expansion, of course, does not necessarily include all areas where a senior user has in fact expanded because such uses may infringe upon junior users' bona fide trade areas. *Id.* Instead, junior users whose uses are in good faith and "remote" are protected. The extent of the zone is generally considered as of the date of the junior user's first use. *See Burger King of Florida, Inc. v. Brewer*, 244 F.Supp. 293 (W.D.Tenn.1965).

The zone of natural expansion doctrine is admittedly a legal fiction created to provide senior users with expansion areas. Thus, there are few firm guidelines to define the senior user's imaginary zone of natural expansion. However, several criteria seem relevant:

> (1) How great is the geographical distance from the senior user's actual loca-

tion to a point on the perimeter of the zone of expansion?

(2) What is the nature of the business? Does it already have a large or small zone of actual market penetration or reputation?

(3) What is the history of the senior user's past expansion? Has it remained static for years, or has it continually expanded into new territories? Extrapolating prior expansion, how long would it take the senior user to reach the periphery of the expansion zone he claims?

(4) Would it require an unusual 'great leap forward' for the senior user to enter the zone, or is the zone so close to existing locations that expansion would be (or is) a logical, gradual, step of the same length as those previously made?

J. McCarthy, *supra*, § 26:9, at 304–05. In addition, the "zone of territorial protection is determined by the nature of the [user's] business." *Junior Food Stores*, 226 So.2d at 396.

Based upon these criteria, and assuming Coast is a senior user, Coast's zone of natural expansion as of January 1984 does not include Dade County. Coast had not even officially entered its licensing agreement with the Florida Department of Education at this time. Nor had Coast used its mark in any identifiable geographic market. Thus, Coast had no penetration in the Dade County cable broadcast market at the time Tally–Ho was actively using its mark in commerce in Dade County. Furthermore, Coast's history of expansion within Florida is static. Over the four years following its licensing agreement, Coast's telecourse had extremely limited use in three community colleges, outside the Dade County area. No use was made or attempted on cable broadcast systems in Florida either prior to or after Tally–Ho's registration of its "You and the Law" mark. In sum, Coast's zone of natural expansion cannot include the Dade County market where Tally–Ho has been using the "You and the Law" mark for four years.

Thus, the district court erred in granting Coast statewide common law rights in the

"You and the Law" mark through its broad application of the related use doctrine and disregard of the geographical component of trademark protections.

### 3. *Preliminary Injunction*

The analysis above reveals that the district court misapplied the law and therefore reached an erroneous conclusion regarding Tally–Ho's likelihood of success on the merits of its claims. Tally–Ho had priority of usage in the Dade County market. Although the district court summarily concluded that the other prerequisites for granting a preliminary injunction were not present, we believe that the record may support contrary findings. For example, it is undisputed that there was a substantial likelihood of confusion if Coast's telecourse were broadcast. Thus, Tally–Ho faced a substantial threat of irreparable injury to its protected trademark and to viewer's goodwill resulting from the broadcast of Coast's course. *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir.1982) ("It is generally recognized in trademark infringement cases that (1) there is not adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm."). Furthermore, the injury to Tally–Ho seems outweighed by any asserted injury to Coast. Tally–Ho's four year investment in its course and trademark is subject to reputational and financial injury from Coast's infringing videocourse. Additionally, an injunction would have no direct financial effect on Coast because Coast does not receive any compensation from the broadcast of its telecourse. Finally, the injunction would be in the public interest by avoiding the inevitable viewer confusion that would otherwise result.

### III. CONCLUSION

 Tally–Ho has a state-registered trademark on "You and the Law" and has been telecasting its programming in Dade County for almost five years. Coast infringed on Tally–Ho's trademark by injecting its "educational" programming series, which uses the same service mark as Tally–Ho, into the Dade County market in which

Tally–Ho has statutory and common law trademark protection. The district court erred by neglecting the geographic component of trademark law and effectively grants Coast state-wide protection for its mark despite Coast's never having used its mark in Florida other than in three community colleges' courses. Coast's common law trademark rights in the educational community college market simply do not extend into the Dade County cable television market. The district court therefore erred in refusing to grant Tally–Ho's request for a preliminary injunction.

Accordingly, we REVERSE the district court's denial of Tally–Ho's motion for a preliminary injunction and REMAND with instructions to the district court to enter a preliminary injunction.