J. Darrell **SIMMONS**, Plaintiff,

v.

**WESTERN PUBLISHING COMPANY, INC.**, Defendant.

Civ. A. No. 1:92–cv–827–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 23, 1993.

James F. Vaughan, Steven David Kerr, Hopkins & Thomas, Atlanta, GA, for plaintiff.

L. Joseph Loveland, Jr., King & Spalding, Atlanta, GA, for defendant.

## ORDER

SHOOB, Senior District Judge.

This copyright and trademark infringement action is before the Court on defendant's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

### I.  FACTS

Plaintiff developed a children's board game which he called "Pen the Pig" in early 1988. In late 1988 or early 1989, plaintiff mailed information on the game, including photographs and instructions, to a number of toy and game companies. None of the forty or fifty companies that received the information bought plaintiff's game.

Defendant is a game manufacturer located in Racine, Wisconsin. Its product development administrator, Margaret Rash, received plaintiff's submission in late 1988 or early 1989 and may have copied and filed the photographs and instructions. She sent a standard rejection letter to plaintiff and did not forward plaintiff's submission to anyone else in the company. Ms. Rash received more than 400 unsolicited submissions in 1989 and estimated that she forwarded for review only two submissions. Copies of the rejected submissions were kept in a locked file near Ms. Rash's office.

In the Spring of 1989, a game design firm, Meyer/Glass of Chicago, presented a game called "Pen the Pig" to defendant. Defendant bought the game from Meyer/Glass, paying $20,000 plus royalties. After acquiring the game from Meyer/Glass, defendant modified the board's design and changed the shape of the pig playing pieces.

The game sold and marketed by defendant and the game created by plaintiff have some similarities. They share the same name, "Pen the Pig." The object of both games is to use a connect-the-dots scheme to fence in pigs. The first player to fence in all of his pigs wins the game. Both games use a grid and fences. There are also some differences between the games. Defendant's game has fewer pens and pigs than plaintiff's. Plaintiff's game is played by rolling a die to determine the number of fence posts that

may be placed each turn. Defendant's game allows only one or two fence sections to be placed at a turn and uses a spinner. Defendant's game also includes penalties. The artwork and design of defendant's game is different from and more elaborate than plaintiff's.

Defendant received an unsolicited "Pen the Pigs" game in 1975 from an inventor unrelated to plaintiff, defendant, or Meyer/Glass. It used a similar format.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that this burden could be met if the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Id.* at 324, 106 S.Ct. at 2553.

In reviewing a motion for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III. *COPYRIGHT INFRINGEMENT*

█ To prevail on his copyright claim, plaintiff must prove (1) that he owns the valid copyright and (2) that defendant copied his product. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 113 (5th Cir.1978). For the purposes of this summary judgment motion, defendant does not contest plaintiff's ownership of the copyright and thus the Court need only consider whether there is a genuine issue of material fact on copying. Because it is almost impossible to produce direct evidence of copying, the courts have developed a two-prong test by which a court may infer copying: the plaintiff must show (1) that defendant had access to the copyrighted work and (2) that the defendant's product is substantially similar to plaintiff's. *Id.* Proof of independent creation, however, can rebut the evidence of access and similarity. *Benson v. Coca–Cola Co.,* 795 F.2d 973, 975, *reh'g denied,* 801 F.2d 404 (11th Cir.1986) (*en banc* ).

### A. *Access*

Plaintiff contends that both defendant and Meyer/Glass had access to his product. Defendant argues that plaintiff has no proof that any employee of defendant's who worked on the "Pen the Pig" game had access to plaintiff's game. Defendant also argues that the members of the design team at Meyer/Glass had never heard of plaintiff's game and had no access to the game.

█ Access is generally defined as "the opportunity to view." *Ferguson,* 584 F.2d at 113 (citing 3 M. Nimmer, *Copyright* § 13.-02[A] (1978)). To show access, plaintiff must show more than a bare possibility of access. *Id.* Access based on speculation or conjecture is impermissible. *Id.*

When plaintiff's game was sent to defendant, Ms. Rash made copies of some of the material and returned the originals to plaintiff. She filed the copies in a file cabinet near her office. The cabinet, which contained other unsolicited submissions, was usually locked. Only the secretary had a key to the cabinet. Although members of the product development department had access to the file cabinet if they requested it, there is no evidence that any members of the department, other than Ms. Rash, saw plaintiff's submission.

Nonetheless, because defendant retained a copy of plaintiff's work, albeit in a locked file cabinet, some members of defendant's production team who were involved with the

development of the product had the "opportunity to view" plaintiff's game. The Court finds that plaintiff has created a genuine issue of material fact on whether some member of defendant's team had "access" to plaintiff's game.

The evidence of Meyer/Glass's access to plaintiff's product, however, is little more than speculation. Plaintiff admits that he never mailed his game to Meyer/Glass. He alleges that because Meyer/Glass occasionally worked for a company called CADACO that also received an unsolicited copy of his game, Meyer/Glass may have had access to plaintiff's game. Plaintiff speculates that because some employees at Meyer/Glass are acquaintances of some CADACO employees and because the two companies are "located in the very same town" (Chicago), Meyer/Glass may have had access to plaintiff's game. (Pl.'s Resp. to Def.'s Summ.J.Mot. at 13.) Plaintiff also argues that the Meyer/Glass employees may have had access to his game during the New York Toy Fair. Plaintiff, however, fails to present evidence that his product was displayed at the fair or that any Meyer/Glass employees attended the fair.

Although there is no evidence that Meyer/Glass had access to plaintiff's game, the Court concludes that there is a genuine question of fact on whether any members of defendant's product development team had access.

### B. *Substantially Similar*

The Court also finds that there is a question of fact as to whether the games are substantially similar. " 'Substantial similarity' exists where 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' " *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 829 (11th Cir.1982) (quoting *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977)). As discussed above, the two games share the same name and the same concept. Both use fences and a connect-the-dots scheme to "pen the pig." While there are differences between the games, these similarities are close enough to create an issue of fact on whether the two games are "substantially similar."

### C. *Independent Creation*

■ Once the plaintiff has created an issue of fact on the question of copying, defendant may rebut that presumption with proof of independent creation. *Original Appalachian Artworks,* 684 F.2d at 829. Uncontradicted evidence of independent creation negates a claim of infringement. *Benson,* 795 F.2d at 975; *Miller v. Universal Studios, Inc.,* 650 F.2d 1365, 1375 (5th Cir.1981). Defendant has produced substantial evidence of independent creation, and plaintiff has failed to contradict this evidence. The Court finds that defendant's evidence of independent creation has successfully rebutted the presumption of copying.

The designers at Meyer/Glass testified that they developed the game in early 1989 before they contacted defendant in April 1989. The testimony describes in detail how the Meyer/Glass designers created the game and how they sold it to defendant. (Klimpert Dep. at 9–13; O'Patka Dep. at 11–22; Yurkovic Dep. at 18–31.) The Meyer/Glass designers developed the format and the name, and they designed a board with a barnyard theme. They played the game to determine how many squares should be built onto the board and how many fence posts would be needed. Plaintiff offers no evidence that these designers had ever heard of his game.

Defendant's product development director George Propsom bought the "Pen the Pig" game from Meyer/Glass and brought it back to defendant's offices for testing in April 1989. After the testing process, Craig Williamson, one of defendant's product designers, tinkered with the structure of the board, experimenting with different ways of connecting the fence pieces and making them stand upright and changing the board size to fit defendant's production capacity. A student intern working with the art director made the preliminary graphic design. Defendant's work on modifying the Meyer/Glass game is documented by several memoranda throughout the spring and summer of 1990.

During the design and testing process, defendant's designer modified the game submitted by Meyer/Glass slightly. They removed some of the graphics in the middle of the playing board and drew lines between the dots, clarifying the grid. Defendant's art director testified that this was done to make the game easier for young children. After these changes, made more than a year after plaintiff's submission, the game produced by defendant looked more like plaintiff's game.

Barbara Hannagan, defendant's art director who recommended connecting the dots with lines, testified that she never saw the Meyer/Glass board. She also testified that Williamson, defendant's product designer, gave her a white board with a grid and directed her to design a barnyard theme.

Plaintiff contends that the similarity between his game board and the white board given to Hannagan rebuts defendant's evidence of independent creation. While the Court agrees that there is some similarity between the description of the white board and plaintiff's game, the similarity is so commonplace given the format of the games that it is not probative of copying. *Ferguson*, 584 F.2d at 114. Furthermore, the white board was as much like the Meyer/Glass board with modified graphics as it was like plaintiff's.

The Court concludes that plaintiff's allegations and speculation do not create a genuine issue of material fact on whether defendant independently created the game. Defendant bought the game from Meyer/Glass, sent it out for testing, and later modified the design. This is substantial, uncontradicted evidence of independent creation. Accordingly, summary judgment is appropriate for defendant on this issue.

## IV. TRADEMARK INFRINGEMENT

■ To prove trademark infringement, plaintiff must show first that he acquired trademark rights in the mark "Pen the Pig." Because plaintiff has no state or federal trademark registrations for the mark, he must show that he appropriated the common law trademark rights through actual prior use in commerce. *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1023 (11th Cir.1989) (citing *United States v. Steffens*, 100 U.S. 82, 85, 25 L.Ed. 550 (1879)). Under the common law of trademark, actual and continuous use of the mark in commerce is necessary to acquire and retain a protectible interest. *Id.* at 1022–23.

Plaintiff concedes that he has never sold any of his "Pen the Pig" games. He sent information to a number of game companies, and one offered to take the game to a New York toy show, but there is no evidence that the game was shown there. Plaintiff prepared to market the game himself, but there is no evidence that he actually marketed the game.

■ Plaintiff argues that because he mailed the game to Illinois at the request of a game company, "transporting it in commerce," he obtained ownership of the mark. The shipment to a potential manufacturer, however, does not constitute the kind of public use necessary to establish ownership of a mark. *Walt Disney Productions v. Kusan, Inc.*, 204 U.S.P.Q. 284, 287 (C.D.Cal.1979). While a single "use" in trade *may* sustain trademark rights, it must be followed by continuous commercial utilization. *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir.1975). Plaintiff has not shown any commercial use and thus has failed to create a genuine issue of material fact on his trademark infringement claim.[1]

## V. UNFAIR COMPETITION AND TRADE PRACTICES CLAIM

Because plaintiff's unfair competition and trade practices claims are based on his alleged ownership of a valid "Pen the Pig" trademark, summary judgment is also appropriate for defendant on these claims.

## VI. CONCLUSION

In summary, the Court GRANTS defendant's motion for summary judgment on all claims [# 12]. The Court also DIRECTS

---

1. Defendant, in fact, has registered a federal trademark for "Pen the Pig." Under trademark law, registration is prima facie evidence of the registrant's ownership and exclusive rights to use the mark. 15 U.S.C. § 1057(b).

plaintiff to show cause within twenty days of the date of this order why defendant should not be awarded attorneys' fees and costs. Defendant's response, if any, shall be filed within ten days of defendant's receipt of plaintiff's filing.

IT IS SO ORDERED.