COMEDY HALL OF FAME,
INC., Plaintiff,

v.

GEORGE SCHLATTER PRODUCTIONS,
INC. and George Schlatter,
individually, Defendants.

No. 94–1627–Civ–T–24(A).

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 26, 1994.

Anne S. Mason, Mason & Associates, P.A., Clearwater, FL, for Comedy Hall of Fame and Anthony Andriuli.

George Karl Rahdert, Kenneth August Guckenberger, Anne Rowell Noble and Rahdert & Anderson, St. Petersburg, FL, for George Schlatter Productions, Inc. and George Schlatter, individually.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Plaintiff's Emergency Motion for Preliminary Injunction (Doc. No. 2, filed October 13, 1994). The undersigned conducted a hearing on Plaintiff's Motion on Tuesday, October 25, 1994. The Court denies Plaintiff's Motion for Preliminary Injunction.

### Statement of Facts

Plaintiff brings this action pursuant to 15 U.S.C. § 1114, for service mark infringement as well as § 495.021, *et seq.*, Fla.Stat., for trademark infringement. Plaintiff claims that Defendants have engaged in unfair competition under common law and federal law, as well as trademark dilution in violation of § 495.151, Fla.Stat. Plaintiff claims that Defendants have infringed on its service mark as registered with the Federal Patent and Trademark Office on October 5, 1993. (*See* Doc. No. 1, Exhibit A). In addition, Plaintiff claims that Defendants have infringed on its trademark "Comedy Hall of Fame" as registered with the State of Florida on August 31, 1994. (*See* Doc. No. 1, Exhibit E).

Plaintiff is a non-profit corporation which was formed to promote the concept of a museum referred to as the "Comedy Hall of Fame."[1] Plaintiff asserts that in 1990, it began to organize and promote the museum. In connection with its efforts to promote the museum, Plaintiff asserts it devised an executive committee comprised of "prestigious" persons affiliated with comedy to select inductees by way of balloting.

---

**1.** The Court takes notice of the fact that Plaintiff Corporation "Comedy Hall of Fame" was registered with the State of Florida on August 31, 1994.

While Plaintiff does not have a physical site for a museum, Plaintiff asserts that it has obtained a commitment from the City of Clearwater for a physical location for the museum and that it has attracted financial backing for the construction and development of the future museum site. However, a review of the Affidavit of Peter Gozza reveals that the City of Clearwater is still in the planning stage of possibly committing a physical site for a museum. (*See* Doc. No. 6, Exhibit 5). A review of the Affidavits of William O'Hara and Allen Sacarow reveals that Plaintiff has not attracted any financial backing except for $20,000 advanced for the purpose of protecting trademark rights. (*Id.,* Exhibits 1 and 3). The Affiants state that they are planning to attempt to raise the five million dollars for the construction of the museum and for future for profit ventures in connection with the museum.

Plaintiff contends that its efforts to establish an awards program associated with a future museum site included the induction of Minnie Pearl into the Comedy Hall of Fame in a live broadcast of the "Grand Old Opry Live" in April, 1994. Plaintiff also submitted correspondence in support of its contention that comedians and their families are aware of Plaintiff's efforts to build a museum. Plaintiff also contends that it continues to solicit donations of memorabilia from comedians and their families which will eventually go on display in a museum.

Defendants assert that their use of the term "Comedy Hall of Fame" dates back to at least January, 1993, when Defendant Schlatter began preparations for the first awards banquet honoring well known comedians. The First Annual Comedy Hall of Fame was taped in Beverly Hills, California, in August, 1993. Defendants' "First Annual Comedy Hall of Fame" was aired by the National Broadcasting Company (hereinafter "NBC") in November, 1993. The awards banquet in August, 1993, and the television broadcast in November, 1993, received coverage in newspapers and magazines with na-

tional circulation. (*See* Doc. No. 9, Exhibit B to Exhibit 1).

Based on the overwhelming success of the First Annual Comedy Hall of Fame, Defendants and NBC agreed to produce a second awards show. Schlatter began working on the Second Annual Comedy Hall of Fame in January, 1994. Schlatter and NBC formerly executed a contract in March, 1994, which solidified Defendants' agreement to produce a second show suitable for a national broadcast in exchange for compensation. The Second Annual Comedy Hall of Fame was taped in Beverly Hills, California, in August, 1994.

A review of the file reveals that Plaintiff's efforts to prevent Defendants from using the mark "Comedy Hall of Fame" consist of a letter drafted by Tony Belmont as Director of the National Comedy Hall of Fame to Defendant Schlatter prior to the broadcast in November, 1993. The letter does not reveal any demand by Belmont that Defendants cease using the name "Comedy Hall of Fame." In fact, Tony Belmont suggests in his letter to Defendant Schlatter that since Defendant Schlatter's "interest seems to be network T.V. for awards, and ours is primarily to induct into the museum perhaps as two businessman, there is some middle ground that might serve both our interests profitably." (*See* Doc. No. 1, Exhibit B).

Plaintiff asserts that Defendant is improperly using Plaintiff's name and is playing off the reputation that Plaintiff has worked so hard to build. Plaintiff asserts that by broadcasting a program which embodies a name belonging exclusively to Plaintiff, Defendant is intentionally infringing on Plaintiff's marks.[2] Plaintiff claims that such infringement is irrevocably harming Plaintiff's reputation and constitutes unfair competition. Plaintiff contends that despite Plaintiff's demands to the contrary, Defendant is currently scheduled to air the Second Annual Comedy Hall of Fame on Saturday, October 29, 1994, on NBC. Plaintiff seeks a preliminary injunction restraining Defendants from broadcasting the Second Annual Comedy Hall of Fame on October 29, 1994.

2. Plaintiff does not offer any evidence that Defendants "intentionally" infringed on any marks allegedly owned by Plaintiff.

While Belmont registered a service mark or graphic registration embodying the term "National Comedy Hall of Fame", the federal registration specifically disclaims the exclusive right to use "National Comedy Hall of Fame" apart from the mark as shown. *Id.* Defendants claim that Plaintiff has not provided any evidence which tends to show that Defendants have used or are planning to use the service mark registered by Belmont. In addition, Defendants claim that Belmont's use of the service mark has been extremely limited, if non-existent.

In support of their claim that Plaintiff does not have any trademark interest in the mark "Comedy Hall of Fame", Defendants assert that Belmont's attempt to register the mark "Comedy Hall of Fame" with the federal Patent and Trademark Office failed on May 18, 1994. (*See* Doc. No. 9, Exhibit 3). After reviewing the application, the examining attorney determined that the mark "Comedy Hall of Fame" was a descriptive term in that it described services pursuant to 15 U.S.C. § 1052(e)(1).[3] *Id.*

Finally, Defendants claim that Plaintiff's failure to assert any alleged rights for more than a year after it discovered Defendants' use of the mark "Comedy Hall of Fame" and fourteen days prior to the scheduled broadcast of the Second Annual Comedy Hall of Fame acts to bar Plaintiff's claims.

Defendants claim that they have expended in excess of 1.5 million dollars to produce the Second Annual Comedy Hall of Fame. (*See* Doc. No. 9, Exhibit 1). To date, NBC has sold practically all of the advertising time for the October 29, 1994 broadcast. *Id.*, Exhibit 2. Gross revenue sales for the advertising time exceed one million dollars. *Id.* In addition, NBC has embarked on a $750,000.00 advertising campaign to promote the second show. *Id.* NBC will have spent $367,000.00 in television, print and radio advertising campaign as of Tuesday, October 25. *Id.* Defendants assert that if this Court enjoins the Saturday broadcast, Defendants will lose their production costs and may be liable to NBC for breach of contract. It is clear that NBC will also forfeit the money it has spent to date on advertising and will be unable to deliver to the advertisers the programming for which they paid.

## Analysis

■ In order to justify the issuance of a preliminary injunction, the movant must establish:

(1) a substantial likelihood of prevailing on the merits; (2) an irreparable injury if the injunction does not issue; (3) a threatened injury to [the movant] that is greater than any damage the preliminary injunction would cause the [opposing party]; and (4) the absence of any adverse effect on the public interest in the injunction issues. *Cafe 207, Inc. v. St. Johns County,* 989 F.2d 1136, 1137 (11th Cir.1993).

### A. Substantial Likelihood of Prevailing on the Merits

■ The Court finds that Plaintiff has not shown that it has a substantial likelihood of prevailing on the merits of this action. In order to prevail on a claim for trademark infringement, the claimant must show that it has a valid interest in a mark. *Dieter v. B & H Industries of Southwest Florida,* 880 F.2d 322, 326 (11th Cir.1989), *citing* 15 U.S.C. § 1114(1)(a); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). The claimant must also show that the defendant's use of its valid mark is likely to cause confusion. *Id.*

While Plaintiff clearly owns the service mark as registered with the federal Patent and Trademark Office, the record does not contain any evidence in support of Plaintiff's claim that Defendants have infringed on that service mark. (*See* Doc. No. 1, Exhibit A). It is clear that Defendants have never utilized the service mark which embodies the term "National Comedy Hall of Fame." Accordingly, the Court will only consider Plaintiff's claim that Defendants have infringed on the mark "Comedy Hall of Fame."

---

3. In making his determination, the examining attorney also noted the "applicant's prior registration" in which "the applicant disclaimed the wording 'National Comedy Hall of Fame'."

■ The Court finds that Plaintiff has not proven by a preponderance of the evidence that it owns the mark "Comedy Hall of Fame." Belmont's attempt to register the mark "Comedy Hall of Fame" with the federal Patent and Trademark Office failed on May 18, 1994. (*See* Doc. No. 9, Exhibit 3). The examining attorney determined that the mark "Comedy Hall of Fame" was a descriptive term in that it was merely descriptive of a "museum/hall of fame, relating to the history of comedy with special recognition and awards to be made to past and present comedians." *Id.* In light of the foregoing, the Court finds that Plaintiff has failed to show that it holds a valid registration of the mark "Comedy Hall of Fame" and that its mark is incontestible. *See Dieter,* 880 F.2d at 326.

■ The Court also finds that Plaintiff has not met its burden of showing that it has a substantial likelihood of prevailing on the merits of its claim under common law trademark principles. Under common law, trademark rights are only acquired through actual prior use in commerce. *Id., citing United States v. Steffens,* 100 U.S. 82, 25 L.Ed. 550 (1879); J. McCarthy, Trademarks and Unfair Competition § 16:1, at 720 (2d Ed.1984). Plaintiff has failed to show that it has engaged in actual and continuous use of the mark "Comedy Hall of Fame." The Court does not find that a few letters, hats and t-shirts sent to comedians and their families since 1990 are sufficient to establish actual and continuous use of the "Comedy Hall of Fame" mark. In addition, Plaintiff's "plans" to use the mark in association with future plans to construct a museum or to raise funds for the construction of a museum are insufficient to establish actual and continuous use. An unregistered "plan" to use a mark does not create any rights in that mark. *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 504 (7th Cir.1992).

■ Even if Plaintiff had established actual and continuous use of the mark, Plaintiff has failed to show that it has a substantial likelihood of prevailing on the merits of its claim that it was the first to use the mark "Comedy Hall of Fame." In addition to showing actual and continuous use, Plaintiff's ownership of the mark is limited by priority of use. *Tally–Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1023 (11th Cir. 1989). The first to use a mark on a product or service in a particular geographical market is the senior user of a mark and acquires right in the mark in that market. *Id.* Plaintiff has failed to show that it was the first to use the mark "Comedy Hall of Fame" in association with a product or service.

Since Plaintiff has failed to show that it has a substantial likelihood of prevailing on merits of its claim that it has a valid trademark, the Court will not make any determination of whether or not Plaintiff has a substantial likelihood of prevailing on its claim that Defendants' use of the mark "Comedy Hall of Fame" is likely to cause confusion. *See Dieter,* 880 F.2d at 326.

■ Plaintiff has also failed to show that it has a likelihood of prevailing on the merits of its claim against Defendants for trademark dilution. Plaintiff has failed to produce any evidence which tends to establish that the mark "Comedy Hall of Fame" has become a symbol of loyalty and goodwill towards Plaintiff. *See Tally–Ho, Inc.,* 889 F.2d at 1024.

B. *Irreparable Harm*

■ Since Plaintiff has not shown that it has a valid trademark in the mark "Comedy Hall of Fame", Plaintiff does not enjoy a presumption of irreparable harm as a matter of substantive trademark law. *See* 15 U.S.C. § 1115(a). The Court finds that Plaintiff has failed to produce any evidence of any actual harm incurred as result of Defendants' use of the mark "Comedy Hall of Fame." The only evidence of harm produced by Plaintiff is prospective in nature and relates only to Plaintiff's speculative plans to raise money, secure a physical location and possibly build a museum. Plaintiff has failed to show that it suffered any harm as a result of the broadcast of the First Annual Comedy Hall of Fame. The Court finds that, if anything, Plaintiff's business has gone on as usual since the broadcast of the First Annual Comedy Hall of Fame in November, 1993.

C. *Balancing the Harm to the Parties*

■ Defendants stand to lose the 1.5 million dollars they have expended to produce

the Second Annual Comedy Hall of Fame. (*See* Doc. No. 9, Exhibit 1). NBC will forfeit revenues in excess of one million dollars for the sale of advertising time for the October 29, 1994 broadcast. *Id.,* Exhibit 2. NBC will also forfeit the used portion of the $750,-000.00 advertising campaign embarked on to promote the second show. *Id.* Finally, Defendants may be liable to NBC for breach of contract. In light of the speculative nature of harm to Plaintiff and the actual harm which will be suffered by Defendants as well as third parties, the Court finds that the balance of harm weighs heavily in favor of Defendants in this case.

### D. *Public Interest Considerations*

The Court finds that the interests of public policy do not support the injunctive relief sought by Plaintiff.

■ Finally, the Court is persuaded by Defendant's contention that since Plaintiff failed to assert any alleged rights for more than a year after it discovered Defendants' use of the mark "Comedy Hall of Fame" and fourteen days prior to the scheduled broadcast of the Second Annual Comedy Hall of Fame, any injunctive relief sought by Plaintiff is barred by the doctrine of laches. When Plaintiff discovered that Defendants were using the mark "Comedy Hall of Fame", it elected to attempt to negotiate a deal rather than to demand that Defendants cease and desist using the mark. Plaintiff then waited another thirteen months to bring this action. The Court finds that, under the facts of this case, Plaintiff has waited an unreasonable length of time to assert its alleged rights. *See New Era Publications Int'l. v. Henry Holt & Co.,* 873 F.2d 576, 585 (2d Cir.1989).

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Plaintiff's Motion for Preliminary Injunction (Doc. No. 2) is **DENIED.**

**DONE AND ORDERED.**