LEVI STRAUSS & CO.,
Plaintiff–Appellee,

v.

SUNRISE INTERNATIONAL TRADING INC., Defendant,

Duty Free Worldwide Shops, Inc., a/k/a Duty Free Shops, International Product Locators, Defendants–Appellants,

Georgio Ceciarelli, Defendant,

Robert Sussman, Defendant–Appellant,

Unique Brush Company, Ron Carillo, Eduardo Garza, Eduardo Garza y Cia, Defendants,

Pavignani Ceciarelli, Inc., Vicelli International Corp., International Atlantic Corp., Defendants–Appellants.

No. 93–4844.

United States Court of Appeals,
Eleventh Circuit.

May 5, 1995.

---

Frederick Albert Cary, Ft. Lauderdale, FL, for all appellants.

Stephan P. Lange, Fort Lauderdale, FL, for Garza y Cia.

Peter H. Goldsmith, Timothy R. Cahn, Joshua R. Floum, San Francisco, CA, for Levi Strauss.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This is an appeal from the district court's entry of a preliminary injunction and asset freeze in a suit brought under the Lanham Act. We AFFIRM.

## I.

Levi Strauss & Co. ("LS & CO"), a Delaware corporation with its principal place of business in San Francisco, California, manufactures blue jeans which are sold in the United States and abroad. LS & CO holds valid United States trademarks for "Levi's 501's," a style of button-fly jeans.

Appellants are individuals and corporations transacting business in Florida. Appellants are not authorized to trade in LS & CO products or to use LS & CO trademarks.

On July 1, 1993, LS & CO filed a complaint against appellants in the Southern District of Florida, claiming that appellants had offered for sale tens of thousands of pairs of counterfeit Levi's 501 jeans. Specifically, LS & CO contended that appellants were part of an "illicit enterprise involving the manufacture of large quantities of counterfeit Levi's in the People's Republic of China and elsewhere." It alleged that appellants had bought and sold counterfeit Levi's and arranged for their shipment to mostly European buyers. LS & CO stated federal claims of trademark infringement, false designation of origin, false description, and racketeering, and state claims of statutory trademark dilution, injury to business reputation, and unfair competition. It sought a temporary restraining order, an entry inspection of appellants' business premises, preliminary and permanent injunctions, and damages.

The district court issued the temporary restraining order and granted LS & CO's request for an inspection of appellants' business premises in Florida. The inspection revealed voluminous documents demonstrating that appellants had engaged in allegedly illegal transactions. The inspection also revealed two pairs of counterfeit Levi's 501 jeans. The documents and jeans were seized.

The district court held a brief evidentiary hearing regarding the preliminary injunction, at which LS & CO's corporate security director, Thomas Nagle, testified. The district court also reviewed the evidence seized from appellants' business premises and sworn statements offered by LS & CO. Although appellants argued against the preliminary injunction, they presented no opposing evidence.

The district court adopted LS & CO's proposed findings of fact and conclusions of law. It found that appellants had engaged in an illicit enterprise involving numerous transactions to manufacture and sell counterfeit LS & CO products; had created fraudulent documents certifying their counterfeited products to be "Levi's" jeans made in the United States; and had copied and used the "Levi's" mark, trade name, and trade dress without permission. The district court also found that there was evidence indicating that appellants' business premises in Florida were used extensively to facilitate and perpetrate the ongoing fraud.

In accordance with its findings, the district court issued a preliminary injunction preventing appellants from (1) participating in transactions involving any genuine or counterfeit LS & CO product; (2) representing that any product with which they dealt was connected to LS & CO; (3) representing that they were connected in any way with LS & CO; and (4) further diluting or infringing on any "Levi's" trademarks or otherwise damaging LS & CO's reputation. The injunction further required appellants to surrender any inventory or material with "Levi's" marks and to file a report reflecting compliance with the injunction. Finally, the injunction imposed an asset freeze on appellants, limiting appellants' spending to enumerated business expenses and a $2000 per month living allowance.

## II.

Appellants maintain that the district court did not have subject matter jurisdiction because the counterfeit jeans were not manufactured or intended for final sale in the United States. We review a district court's decision regarding subject matter jurisdiction *de novo*. *Motorcity of Jacksonville, Ltd. v. Southeast Bank,* 39 F.3d 292, 295 (11th Cir.1994).

The Lanham Act applies to all "commerce within the control of Congress." 15 U.S.C. § 1127. The Supreme Court applied the Lanham Act to extraterritorial activities in *Steele v. Bulova Watch Co.,* 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952). In *Bulova,* a United States citizen purportedly manufactured and sold counterfeit watches in Mexico, allegedly infringing the United States trademark of a United States corporation. *Bulova* held that the "broad jurisdictional grant" of the Lanham Act extended to Steele's extraterritorial activities because "[h]is operations and their effects were not confined within the territorial limits of a foreign nation." *Id.* 344 U.S. at 286, 73 S.Ct. at 256. The *Bulova* court noted that both parties

were American, that U.S. components were used in the watches, that the Mexican watches were sometimes repaired at U.S. jewelers, and that the Mexican watches could adversely affect Bulova's trade reputation in the United States and abroad. It also observed that an exercise of jurisdiction did not impose on the sovereignty of any other nation. *Id.*

Our court recently applied the Lanham Act to extraterritorial activities in *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir.1994). In *Babbit*, we held that the Lanham Act applied to sales of cordless telephones outside the United States because the telephones were shipped through a United States free trade zone. *Id.* at 1179. In so holding, we noted that the following facts also supported jurisdiction: the primary corporate defendant was a United States corporation, negotiations had occurred in the United States, and sales had been orchestrated from a Florida office.

The instant case is similar to *Bulova* and *Babbit*. The plaintiff is a United States corporation. Some or all of the corporate defendants are United States corporations. All of the individual defendants are United States residents. Counterfeit jeans were discovered at appellants' business premises in Florida, and the evidence suggests that some of the counterfeit jeans were shipped through the United States on their way to Europe. The alleged transactions involved fraudulent documents stating that the jeans were made in the United States. Moreover, many of the alleged illegal activities, including locating and negotiating with prospective buyers and arranging for shipment, occurred in the United States. In light of these facts, we conclude that the district court had subject matter jurisdiction over LS & CO's claims.[1]

## III.

■ Appellants argue that there was insufficient evidence to support the preliminary injunction. We review the grant of a preliminary injunction for abuse of discretion, giving no deference to the district court's legal determinations. *Church v. City of Huntsville*, 30 F.3d 1332, 1341–42 (11th Cir.1994).

To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor. Instead, it must determine whether the evidence establishes: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Church*, 30 F.3d at 1342. At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is "appropriate given the character and objectives of the injunctive proceeding." *Asseo v. Pan American Grain Company*, 805 F.2d 23, 26 (1st Cir.1986).

■ Appellants' main contention is that the record contains insufficient evidence to show that they were involved in the manufacturing and sale of counterfeit Levi's. We disagree. Our review of the record has revealed sufficient evidence to establish a substantial likelihood of proving that each appellant engaged in the alleged activity. The record contains the testimony of Thomas B. Nagle, LS & CO's corporate security director; sworn statements regarding the al-

1. Although the Eleventh Circuit has not clearly established the role international comity should play in extraterritorial application of the Lanham Act, other circuits have interpreted *Bulova* as requiring a comity analysis. *See, Nintendo of America, Inc. v. Aeropower Co., Ltd.*, 34 F.3d 246 (4th Cir.1994) (remanding for district court to consider defendant's citizenship and the possibility of conflict with foreign law); *Reebok International, Ltd. v. Marnatech Enterprises*, 970 F.2d 552, 556–57 (9th Cir.1992) (finding that comity concerns did not preclude jurisdiction); *Ameri-*

*can Rice, Inc. v. Arkansas Rice Growers*, 701 F.2d 408 (5th Cir.1983) (same). We do not view our decision as imposing on the sovereignty of the countries where the counterfeit jeans were allegedly resold. First, appellants have not claimed that their actions were legal in any other country. Second, this case need not preclude foreign suits for infringement of non-U.S. trademarks outside the United States. Third, appellants have not complained that they have been enjoined from any purely extraterritorial activity having no effect on U.S. commerce.

leged counterfeit jeans transactions; and sworn statements regarding the inspections of appellants' Florida business premises. The record includes numerous documents linking Duty Free Shops and Robert Sussman to counterfeit jean sales. It contains a copy of a fax from Sussman on International Product Locators letterhead describing specifications for 20,000 pairs of jeans to be sent from China. The record also has invoices for International Atlantic and Vicelli International for large purchases of jeans using the same address as Duty Free, as well as suspicious letters on Pavignani Ceciarelli and Vicelli International letterhead which appear to relate to counterfeit jean sales.

Appellants' claim that the record contains insufficient evidence to prove that LS & CO holds current U.S. trademarks is unfounded. The record contains a 1989 trademark registration statement for "501," 1988 and 1989 certificates of renewal for two "Levi's" logos, and a 1990 certificate of renewal for the "two horse design" used on the Levi's label. The record thus demonstrates that these trademarks were current as of 1993. Even without evidence that LS & CO's other trademarks are current, the proof of four valid trademarks is sufficient to support the preliminary injunction.

■ Appellants' contention that the record contains insufficient evidence to prove that LS & CO was harmed by the alleged counterfeit activities is likewise meritless. There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales. This court has previously stated that such trademark infringement "by its nature causes irreparable harm." *Tally–Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1029 (11th Cir.1989). The presumption of harm was strengthened in this case by Nagle's testimony that LS & CO had been harmed by the alleged counterfeiting.[2]

## IV.

Appellants also argue that the district court abused its discretion by enjoining them from participating in lawful transactions involving genuine LS & CO products. Appellants, however, did not present this argument to the district court, so we will not address it on appeal.[3] *See Troxler v. Owens–Illinois, Inc.*, 717 F.2d 530, 533 (11th Cir.1983).

■ Appellants' claim that they had insufficient notice of the scope of the preliminary injunction does not change our result. We have held that the "sufficiency of notice prior to the issuance of a preliminary injunction is a matter left within the discretion of the trial court." *United States v. State of Alabama*, 791 F.2d 1450, 1458 (11th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987). In this case, appellants' counsel had at least a weekend to prepare their opposition to the preliminary injunction. The district court did not find that they had insufficient time to prepare a defense. We do not view this as an abuse of discretion. *Id.* (one to three preparation days not insufficient).

## V.

■ In addition to enjoining appellants' activities, the district court froze most of appellants' assets pending a permanent resolution of the case. The district court cited Rules 64 and 65 of the Federal Rules of Civil Procedure; the Lanham Act, 15 U.S.C. §§ 1116(a) and 1117; and its inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief. We review asset freezes for abuse of discretion but do not defer to the district

---

2. Appellants also challenge the accuracy of twenty-three of the district court's findings of fact. Many of the challenged findings were not necessary to grant the preliminary injunction and asset freeze. Because we find sufficient evidence in the record to support the preliminary injunction, we need not determine whether each of the district court's findings of fact is supported by the record.

3. Instead, in a motion to the district court requesting a stay of the injunction on other grounds, appellants stated they did "not object to the portion of the Court's Order prohibiting them from dealing in any of the products of the Plaintiff or products purporting to be of the Plaintiff and will voluntarily refrain from such conduct until the trial of this matter."

court's legal analysis. *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1526 (11th Cir.1994).

### A.

■ Appellants claim that the district court did not have the power to freeze their assets. They cite two recent Eleventh Circuit cases reversing asset freezes, *Rosen v. Cascade Int'l, Inc.* and *Mitsubishi International v. Cardinal Textile Sales.*[4] *Rosen* involved an asset freeze granted to preserve a defendant's assets to satisfy a money judgment in a securities case. The available remedies in *Rosen* were legal, not equitable. *Rosen*, 21 F.3d at 1526. We held that "preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority." *Id.* at 1530. *Mitsubishi* involved a constructive trust granted to preserve a defendant's assets in a suit alleging fraudulent inducement. In *Mitsubishi*, we explained that "a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Id.* at 1521 (citing *In re Fredeman Litigation*, 843 F.2d 821, 824 (5th Cir.1988)).[5]

■ This case differs from *Rosen* and *Mitsubishi*. Here, LS & CO seeks a permanent injunction and the equitable remedy of receiving appellants' profits from counterfeiting under 15 U.S.C. § 1117. A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief. *See Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir.1984) (district court may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible). The Ninth Circuit recently reached the same result in a Lanham Act counterfeiting case. *See Reebok*, 970 F.2d at 558–63. It held that the availability of an equitable profits remedy invokes the "district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Id.* at 559. As such, we conclude that the district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits.

### B.

■ Our conclusion leads us to consider appellants' other argument—that the district court's asset freeze was too broad because the district court improperly froze appellants' assets without tracing them to illegal activity. It is not clear that the district court's authority extended to freezing those assets which might not have been available to satisfy an award of profits. *Compare Mitsubishi*, 14 F.3d at 1521 (unrelated assets cannot be frozen to satisfy nonequitable money judgment) and *Reebok*, 970 F.2d at 560 n. 11 (expressing doubt that court can freeze assets not available for final equitable relief) *with Kemp v. Peterson*, 940 F.2d 110, 113–14 (4th Cir.1991) (district court may freeze assets not specifically traced to illegal activity).

We need not resolve this question because appellants have not asked the district court to exempt any particular assets from the freeze on the ground that they were not linked to the profits of allegedly illegal activity. *See Federal Trade Commission v. Atlantex Associates*, 872 F.2d 966, 970–71 (11th Cir.1989) (rejecting challenge to scope of asset freeze because appellants had not asked the district court to revise the freeze). The asset freeze in this case expressly allowed appellants to petition the district court to modify the freeze. In light of *Atlantex*, we

4. *Mitsubishi International v. Cardinal Textile Sales*, 14 F.3d 1507 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1092, 130 L.Ed.2d 1061 (1995).

5. *But see In re Estate of Ferdinand Marcos Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) (holding that district courts have authority in extraordinary cases to freeze assets to preserve nonequitable money damages and noting that the First, Second, Third, Fourth, Seventh, Eighth, Tenth, and District of Columbia Circuits have reached similar conclusions), *cert. denied*, —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995).

cannot hold that the freeze is too broad until a similar challenge is rejected by the district court.[6]

## VI.

For the foregoing reasons, we AFFIRM.

6. The district court granted appellants' only request for a modification of the freeze, ruling that appellants could pay their attorneys' fees.