**Mary NOBLE, Sabrina Conyers, Rosetta Horne, and Trumella James, Plaintiffs,**

v.

**Brian TOOLEY, as Chief of Police, City of Sanford; the City of Sanford, Florida; the Housing Authority of the City of Sanford; and Timothy D. Hudson, Executive Director, in his official capacity, Defendants.**

No. 6:00–CV–900–ORL–31A.

United States District Court, M.D. Florida. Orlando Division.

Nov. 21, 2000.

*Jarriel v. General Motors Corp.*, 835 F.Supp. 639 (N.D.Ga.1993).

Catherine D. Reischmann, William Colbert, Stenstrom, McIntosh, Colbert Whigham & Simmons P.A., Sanford, FL, for Defendants.

Christopher Hill, Richard Geller, Thomas Slogar, Rumberger, Kirk & Coldwell, Orlando, FL, for Sanford Housing Authority and Timothy Hudson.

## ORDER

PRESNELL, District Judge.

This cause came on for consideration after a hearing on Plaintiffs' Motion for a Preliminary Injunction (Doc. 2, filed July 14, 2000) and the responses thereto by Defendants The Housing Authority of the City of Sanford ("the Housing Authority") and Timothy D. Hudson (Doc. 38, filed August 25, 2000) and by Defendants the City of Sanford and Brian Tooley (Doc. 42, filed August 25, 2000), as well as various memoranda and affidavits filed in conjunction with these documents.

■ As a preliminary matter, Defendants Hudson and the Housing Authority have objected to, or in the alternative moved to strike (Doc. 41, filed August 25, 2000), certain exhibits attached to the Plaintiffs' Motion for Preliminary Injunction and the Complaint. The Defendants argue that all of the exhibits to which they

object are "immaterial, impertinent, and prejudicial." The only ground upon which the Defendants elaborate in their motion is that of materiality. Most of the documents they seek to strike, they argue, concern Housing Authority residents who are not a part of this case. Although this is true, the documents, with one exception, are relevant to the issue of the existence of the allegedly unconstitutional Housing Authority practice at issue in this case.[1] The Defendants have failed to demonstrate that mere prejudice to a party can serve as grounds for striking of evidence, and have failed to demonstrate any "impertinence" on the part of these documents.

■ In addition, the Defendants' hearsay objections to these exhibits are ill-taken at this stage of the proceedings. "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise International Trading, Inc.,* 51 F.3d 982, 985 (11th Cir.1995) (quoting *Asseo v. Pan American Grain Co.,* 805 F.2d 23, 26 (1st Cir.1986)). The Defendants' objection or, in the alternative, motion to strike (Doc. 41, filed August 25, 2000), will be denied.

## BACKGROUND

The Plaintiffs are indigent tenants of Defendant Housing Authority, whose executive director is Defendant Hudson. The Plaintiffs seek injunctive relief in regard to an alleged policy by which all four Defendants make use of a standard lease provision to conduct warrantless searches of Housing Authority residences in violation of the Fourth Amendment to the United States Constitution. The lease provision at issue—paragraph XII(b)2 of the "Hous-

ing Authority of Sanford, Florida Residential Lease Agreement"—reads as follows: "The Authority may enter Tenant's dwelling unit at any time without advance notification when there is reasonable cause to believe that an emergency exists." It is undisputed that all four of the Plaintiffs' leases contain this clause.

According to the Plaintiffs, Defendant Hudson contends that a suspicion of criminal activity is "reasonable cause to believe that an emergency exists" and thus, pursuant to the lease clause quoted above, in such a situation he has their consent to enter their residence and search it, either alone or accompanied by law enforcement officers, even in the absence of a search warrant or exigent circumstances such as being in hot pursuit of a fleeing felon. Although they raise a host of arguments in defense of their actions and this suit, Defendants Hudson and the Housing Authority argue principally that "the emergency entry provision is not unconstitutional" (Doc. 38 at 13) because "an emergency, reasonably so identified, makes such an entry 'reasonable'" (*Id.,* quoting *Archibald v. Mosel,* 677 F.2d 5 (1st Cir.1982)). All of the Defendants also challenge the Plaintiffs' standing to seek an injunction.

## STANDARDS AND APPLICATION

### 1. Standing

Standing is a threshold jurisdictional question that must be addressed prior to and independent of the merits of a party's claims. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998); *Florida Assoc. of Med. Equip. Dealers v. Apfel,* 194 F.3d 1227, 1230 (11th Cir.1999). Courts are obliged to consider standing *sua sponte* even if the parties have not raised the issue. *See United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995); *University*

---

1. The one exception is the newspaper article attached to the complaint as Exhibit "J," which details Sanford Mayor Larry Dale's position on certain social welfare issues. The Court has determined the article is not rele-

vant to the dispute currently before it, and has not taken it into consideration in deciding the instant motion. However, striking of the document is not warranted.

*of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999).

To satisfy the constitutional requirements of standing, a plaintiff must make three showings:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] independent action of some third party not before the court." Third, it must be "likely" as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations and footnotes omitted). *See also Church v. Huntsville,* 30 F.3d 1332, 1335 (11th Cir. 1994).

■ Clearly, in the instant case, any Fourth Amendment violation would be traceable to the alleged policy of the Defendants to conduct warrantless searches, and an injunction against such searches seems likely to redress such an injury. However, the Defendants challenge the "injury in fact" requirement, arguing that, at best, the Plaintiffs have alleged a hypothetical threat that their civil rights will be violated. *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 104, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (Plaintiff who had been subjected to choke hold by police officer lacked standing to challenge policy of choke hold use where there was no indication that he might (1) violate law again and, (2) while being arrested, be subjected to an unconstitutional chokehold). However, this Court concludes that the Plaintiffs' prospects of being subjected to a warrantless search is far less remote than those of the plaintiff in *Lyons.* Here, the Plaintiffs' submissions demonstrate that illegal activity is not a prerequisite to being subjected to such a search. Instead, the evidence suggests that Defendant Hudson is willing to take such a step based on a single phone call alleging the presence of narcotics in someone's home. Further, the Defendants Hudson and the Housing Authority contend in their Response to Proposed Preliminary Injunction Order Submitted by Plaintiffs (Doc. 74, filed October 18, 2000) that, if they were to be informed that a suspected arsonist has entered a residence, they would have "every right" to enter "for the protection and preservation of the premises". In other words, the Defendants herein continue to argue that a mere suspicion of criminal activity justifies a warrantless search of the Plaintiffs' residences. To the extent such a search would violate the Fourth Amendment, it would result from circumstances beyond the Plaintiffs' control, unlike the situation in *Lyons. See Honig v. Doe,* 484 U.S. 305, 320, 108 S.Ct. 592, 602, 98 L.Ed.2d 686 (1988).

**2. The Fourth Amendment and Preliminary Injunction**

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."

As the Supreme Court recently reiterated in *Wilson v. Layne,* 526 U.S. 603, 609–610, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999), the Fourth Amendment embodies the centuries-old principle of respect for the family home, a principle that predates the founding of the United States: "The law of England has so particular and tender a regard to the immunity of a man's house, that it stiles it his castle, and will

never suffer it to be violated with impunity: agreeing herein with the sentiments of ancient Rome.... For this reason no doors can in general be broken open to execute any civil process; though, in criminal causes, the public safety supersedes the private." William Blackstone, *4 Commentaries on the Laws of England* 223 (1765–1769). Both 42 U.S.C. § 1983 and *Bivens* actions allow for the recovery of monetary damages against government officials for violations of Fourth Amendment rights. *Wilson v. Layne,* 526 U.S. at 609, 119 S.Ct. at 1696, 143 L.Ed.2d 818.

 To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiffs' favor. *Levi Strauss & Co. v. Sunrise International Trading, Inc.,* 51 F.3d 982, 985 (11th Cir.1995). Instead, it must determine whether the evidence establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Id.*

 The Defendants challenge all four factors. This Court has little difficulty in concluding that the Plaintiffs have established a substantial likelihood of success on the merits. *See, e.g., Chapman v. United States,* 365 U.S. 610, 616, 81 S.Ct. 776, 779, 5 L.Ed.2d 828 (1961) (rejecting landlords' argument that he had absolute right to enter rented premises to "view waste" and bring officers with him on grounds that the purpose in entering was not to view waste but to search for evidence of illegal activity and because upholding such an entry and search without a warrant would reduce the Fourth Amendment to a nullity and leave tenants' homes secure only in the discretion of landlords) *and Blanco v. Florida,* 438 So.2d 404, 404 (Fla. 4th DCA 1983) (Finding that search of apartment illegal and stating that "[t]he State argues that under the terms of the agreement the landlord had the right to enter. We agree, but that right was for reasonable access for inspection purposes and in order to spray for infestations. Inviting the police to enter and search the apartment is another matter altogether").

This Court also concludes that the Plaintiffs have made a sufficient showing as to the substantial threat of an irreparable injury. The Defendants argue that the exclusionary rule and the prospect of monetary damages in a *Bivens* or § 1983 action nullifies the irreparability of the injury. This Court disagrees. As the Fourth Circuit Court of Appeals explained in *Lankford v. Gelston,* 364 F.2d 197, 202 (4th Cir.1966):

> There can be little doubt that actions for money and damages would not suffice to repair the injury suffered by the victims of [illegal] searches.... In any event, the wrongs inflicted are not readily measurable in terms of dollars and cents. Indeed, the Supreme Court itself has already declared that the prospect of pecuniary redress for the harm suffered is 'worthless and futile'. Moreover, the lesson of experience is that the remote possibility of money damages serves as no deterrent to future police invasions.

Defendants' arguments as to the final two points merit little discussion. The Defendants have demonstrated no harm that might come to them as a result of a ban on conducting searches pursuant to the above-quoted lease provision. The order sought would not implicate warrantless police searches that rely on probable cause, consent, or exigent circumstances. Thus, it will not result in harm to the public interest. And, despite Defendants' repeated arguments on this point, the order is not so broad and non-specific as to constitute a prohibited "obey the law" injunction. *See Hughey v. JMS Development Corp.,* 78 F.3d 1523, 1531 (11th Cir. 1996) (Dissolving injunction that simply prevented developer from discharging

stormwater "if such discharge would be in violation of the Clean Water Act"). The fact that compliance with an injunction would also result in compliance with the law is no barrier to its issuance.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Plaintiffs' Motion for a Preliminary Injunction (Doc. 2, filed July 14, 2000) is hereby **GRANTED,** as follows:

1. The Defendants—the Sanford Housing Authority; its executive director, Timothy Hudson; the City of Sanford, Florida; and Brian Tooley, Chief of Police for the Sanford Police Department—and their agents, employees, and all those acting in concert with them, are hereby **ENJOINED** from using Paragraph XII(b)(2) of the "Housing Authority of Sanford, Florida Residential Lease Agreement" as a substitute for consent or probable cause to search the public housing apartments of Sanford Housing Authority tenants Mary Noble, Sabrina Conyers, Rosetta Horne, and Trumella James for criminal activity.

2. The Sanford Housing Authority and Timothy Hudson, their agents, employees, and those acting in concert with them are hereby **ENJOINED** from consenting on behalf of Mary Noble, Sabrina Conyers, Rosetta Horne, or Trumella James to a warrantless search of their public housing apartments.

3. Because the plaintiffs are indigent and compliance with this preliminary injunction will cause the defendants no monetary injury, bond is hereby **WAIVED.**

4. The Objection or, in the alternative, Motion to Strike by Defendants Hudson and the Housing Authority (Doc. 41, filed August 25, 2000) is **DENIED.**

5. Nothing in this order is intended to enjoin the City of Sanford, its Chief of Police, or the City of Sanford Police Department from (1) carrying out all law enforcement duties and obligations under state law; (2) conducting searches pursuant to lawfully issued search warrants; (3) conducting searches pursuant to resident consent, oral or written, except for any "consent" allegedly shown by the Defendants' signing of a lease containing Paragraph XII(b)(2); (4) conducting searches in response to an existing emergency when there is probable cause to believe a crime has occurred; (5) conducting searches reasonably required to assure the safety of any individual or law enforcement officer while law enforcement officers are engaged in a lawful search.

6. Similarly, nothing in this order is intended to enjoin the Sanford Housing Authority from (1) carrying out all duties and obligations under its Residential Lease Agreement, federal regulations, or state law; (2) entering the apartments of the Plaintiffs to respond to an emergency that concerns the physical integrity of the property, such as flooding, natural gas leaks, fire or other hazards or for any other lawful reason consistent with state and federal law; (3) conducting searches pursuant to lawfully issued search warrants.

7. Further, nothing in this order is intended to diminish or interfere with the authority of City of Sanford police officers to enforce the criminal laws, to make arrests, searches, inquiries, or investigations consistent with constitutional requirements.