940 F.2d 110
 20 Fed.R.Serv.3d 1088
 Jack KEMP, Secretary of Housing and Urban Development,
Plaintiff-Appellee,
v.
William P. PETERSON; Arthur Kujawski; Richard R.
Costenbader; James M. Marley, Defendants-Appellants,
and
Cost Control Marketing & Sales Management of Virginia,
Incorporated; Thornton Byron; Stuart Guskind;
Earl Hissom; Monticello Development, Defendants.
 No. 90-2049.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1990.
Decided Aug. 2, 1991.
 
 Marshall E. Anders, Rosenblum & Anders, P.C., Stroudsburg, Pa., for defendants-appellants.
 Margaret Susan Hewing, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Barbara Biddle, Civ. Div., U.S. Dept. of Justice, Washington, D.C., John P. Alderman, U.S. Atty., Roanoke, Va., on the brief), for plaintiff-appellee.
 Before SPROUSE, Circuit Judge, CHAPMAN, Senior Circuit Judge, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 SPROUSE, Circuit Judge:
 
 
 1
 William Peterson, Arthur Kujawski, James Marley, and Richard Costenbader, officers and owners of Cost Control Marketing & Sales Management of Virginia, Inc. ("CCMV"), appeal from the order of the district court enjoining them from future violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. Sec. 1701 et seq., and freezing their individual assets as security for putative claims of lot owners. We affirm the injunction, but remand to the district court for factual findings concerning the freeze order pursuant to Rule 65(d) of the Federal Rules of Civil Procedure.
 
 I.
 
 2
 CCMV is a corporation wholly-owned by its officers, established for the sole purpose of selling lots of land in Lake Monticello, a property subdivision located in Fluvanna County, Virginia. The subdivision is comprised of 4,592 lots. At the commencement of this suit, CCMV had acquired 918 lots--150 lots from the original developer of the land and 768 from individual sellers. CCMV's sellers are not parties to this suit. Of the 918 lots, CCMV resold 502 to individual purchasers, leaving it with 416 remaining lots.
 
 
 3
 The Interstate Land Sales Full Disclosure Act (the "Act") requires developers of land to register with the Secretary of the Department of Housing and Urban Development ("the Secretary") and to make disclosures to potential purchasers of lots within a subdivision. The Act is designed to prevent fraud and deception in the sale of undeveloped land.[1] The Secretary filed a Complaint and Motion for Preliminary Injunction against CCMV. It charged CCMV with violating the registration and disclosure provisions of the Act, as well as certain other prohibited sales practices, including overcharging for closing costs, misleading advertising, and misinforming purchasers that they had no rights to revoke their contracts.
 
 
 4
 Following a hearing on the motion, the district court ordered a preliminary injunction, enjoining future violations of the Act and freezing the corporate and individual assets of the officers. In addition, it ordered future proceeds from the sale of lots placed in an escrow account pending an ultimate determination on the issue of liability. Finally, it ordered the defendants to submit biweekly or monthly reports to a magistrate judge, to account for personal and business expenses. The officers do not appeal from the injunction,[2] only the order freezing their assets and requiring them to submit monthly accounting reports to monitor compliance. Although we affirm the injunction ruling, including the monthly accounting order, we remand the case in order for the district court to make the appropriate factual findings under Fed.R.Civ.P. 65(d)[3] with respect to the freezing of assets.
 
 II.
 
 5
 There is no question that the district court was within its authority in enjoining the corporate and individual defendants from future violations of the Act. 15 U.S.C. Sec. 1714(a).[4] Since the court determined that the Secretary met his burden of showing violations of the Act (failure to register and make the required disclosures), as well as a "reasonable likelihood" of continued violations, there was no abuse of discretion with regard to this part of the district court's order. See SEC v. Management Dynamics, Inc., 515 F.2d 801, 808-809 (2d Cir.1975) (once plaintiffs show a violation of a specific federal statute, the usual balancing of equities is not required prior to enjoining future violations).
 
 
 6
 Although appellants do not contest the authority of the district court to grant an injunction in the appropriate circumstances, they object to the monthly accounting requirement and freeze order as it pertains to them. First, they argue that the accounting order is burdensome and impermissibly intrusive. Second, they argue that since they are neither developers nor agents, they are not required to comply with the requirements of the Act, nor can they be held individually liable for the corporation's violations. We find their arguments unpersuasive.
 
 
 7
 Appellants' principal objection to the monthly accounting order concerns the prerogative given to the Secretary to object to each accounting report submitted. In our view, this objection falls within the general rule that a court is authorized to issue all orders necessary to enforce orders it has previously issued in the exercise of its jurisdiction. 28 U.S.C. Sec. 1651(a) ("All Writs Act"); United States v. New York Tel. Co., 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977); National Org. for the Reform of Marijuana Laws v. Mullen, 828 F.2d 536, 544 (9th Cir.1987). We find no abuse of discretion, since the order bears a direct relationship to the district court's purpose of monitoring compliance with the freeze order.
 
 
 8
 Appellants' contention that they are not individually responsible for violations of the Act and, therefore, should not be subject to a freeze of their personal assets, is also without merit. The Act defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision...." 15 U.S.C. Sec. 1701(5). "Agent" is defined as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision." 15 U.S.C. Sec. 1701(6). The district court held that CCMV fell within the language of the statute. Moreover, officers, directors, and participating planners may be held individually liable for violations of the Act, notwithstanding the absence of a clause in the Act establishing liability for "controlling stockholders, officers and directors." McCown v. Heidler, 527 F.2d 204, 207 (10th Cir.1975) (quoting Adolphus v. Zebelman, 486 F.2d 1323, 1325 (8th Cir.1973). To hold otherwise would defeat the purpose of the Act, since it is the officers of the corporation who are behind the alleged fraud. See also SEC v. First Am. Bank & Trust Co., 481 F.2d 673 (8th Cir.1973).
 
 III.
 
 9
 Once having found that appellants may be held individually liable, we turn to the issue of whether the district court abused its discretion in freezing appellants' individual assets and requiring that money received from the sale of lots at Lake Monticello be placed in escrow. Initially, we note that since the district court's order was preliminary in nature, pending a final determination of liability, the freezing of funds and the escrowing of monies received from the sale of land may be proper without respect to whether those monies are traceable to proceeds or profits and income from the proceeds. The purpose of a preliminary injunction is to preserve the status quo "where the balance of hardships tips decidedly toward the party requesting the temporary relief and that party has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation...." International Controls Corp. v. Vesco, 490 F.2d 1334, 1347 (2d Cir.) (citations omitted), cert. denied, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). If it can be shown that such a purpose would be served by the enforcement of the district court's order, it should be affirmed. The cases cited by appellants in arguing that profits and income from proceeds may not be disgorged are inapposite in that they prohibit actual disgorgement in situations where liability has been established. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir.1972); SEC v. Blavin, 760 F.2d 706, 713 (6th Cir.1985).
 
 
 10
 Equity powers conferred by the Act permit the court to fashion appropriate remedies. 15 U.S.C. Sec. 1719. See also Manor Nursing Centers, 458 F.2d at 1103 (parallel provision in Securities Act confers equity jurisdiction authorizing order to disgorge proceeds received from violations of that Act). Although "freezing" is an extraordinary remedy, there is no question as to the general authority of the court to fashion the remedy as it did. See Vesco, 490 F.2d at 1347; see also SEC v. American Bd. of Trade, Inc., 830 F.2d 431, 438 (2d Cir.1987), cert. denied, 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988). Such a remedy, of course, must be supported by a showing of fraud, mismanagement, or other reason to believe that, absent the freeze order, the assets would be depleted or otherwise become unavailable. See American Bd. of Trade, 830 F.2d at 438-39; Bowler, 427 F.2d 190, 197 (4th Cir.1970).
 
 
 11
 In order to determine if the freeze order was properly based on such showing, however, we must be able to discern the trial court's reasoning. Fed.R.Civ.P. 65(d); see also United States, Dep't of the Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1475 (4th Cir.1990). Here, the district court failed to make factual findings or state reasons for issuing the order. We, therefore, remand to provide it that opportunity. See FDIC v. Jones, 846 F.2d 221, 240 (4th Cir.1988). In view of the above, the judgment of the district court is affirmed in part, and remanded for further action consistent with this opinion.
 
 
 12
 AFFIRMED IN PART AND REMANDED.
 
 
 
 [1]
 In its philosophy and provisions for disclosure, the Act closely resembles the Securities Act of 1933, 15 U.S.C. Sec. 77a et seq. Therefore, cases interpreting the Securities Act are instructive. See Flint Ridge Dev. Co. v. Scenic Rivers Assoc., 426 U.S. 776, 778, 96 S.Ct. 2430, 2433-34, 49 L.Ed.2d 205 (1976)
 
 
 [2]
 The officers filed a motion for clarification of the district court's order, which was referred to a magistrate judge. In their motion, defendants took issue with the district court's conclusion that CCMV is a "developer" within the meaning of the Act. The magistrate judge recommended minor changes, including a clarification in the order that the ruling as to whether CCMV was a "developer" was only based on the record before the court at the time it was issued
 
 
 [3]
 Rule 65(d) states: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...."
 
 
 [4]
 15 U.S.C. Sec. 1714(a) provides in relevant part:
 Whenever it shall appear to the Secretary that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule or regulation prescribed pursuant thereto, he may, in his discretion, bring an action in any district court ... to enjoin such acts or practices, and, upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond....