**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arthur G. COHEN, Defendant–Appellant,**

and

**Steven M. Terk;  Marvin B. Tepper;
Lawrence M. Goodman;  Ilyne R.
Mendelson, Defendants.**

**No. 98–1519.**

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1998.

Decided Aug. 11, 1998.

**ARGUED:** S.D. Roberts Moore, Jeffery Scott Sexton, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellant. Howard Stanley Scher, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for Appellee. **ON BRIEF:** Lori D. Thompson, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellant. Frank W. Hunger, Assistant Attorney General, Robert P. Crouch, Jr., United States Attorney, Anthony J. Steinmeyer, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for Appellee.

Before WIDENER and WILKINS, Circuit Judges, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Remanded with instructions by published opinion. Judge WIDENER wrote the opinion, in which Judge WILKINS and Senior Judge MICHAEL joined. ·

## OPINION

WIDENER, Circuit Judge:

This case involves an appeal from the entry of a preliminary injunction on March 27, 1998 that prohibited the defendant, Arthur G. Cohen, from dissipating assets during the pendency of the underlying action. In the underlying action, the United States seeks monetary penalties for violations of the federal banking laws allegedly committed by Cohen. After briefing and oral argument, we remand for the reasons set forth below.

On February 25, 1998, the United States filed a complaint against Cohen, Steven M. Terk, Marvin B. Tepper, Lawrence M. Goodman, and Ilyne R. Mendelson for monetary penalties pursuant to 12 U.S.C. § 1833a of the Financial Institution Reform, Recovery and Enforcement Act of 1989. The complaint alleges some 25 counts of banking law violations, including conspiracy under 12 U.S.C. § 1833a(c), bank fraud under 18 U.S.C. § 1344, misapplication of funds under 18 U.S.C. § 657, bank bribery under 18 U.S.C. § 215, illegal participation in loans under 18 U.S.C. § 1006, and making false statements under 18 U.S.C. § 1001. On the same day that it filed the complaint, the government applied for a temporary restraining order and a preliminary injunction to freeze Cohen's assets. The district court entered the TRO on the same day and or-

dered Cohen to appear and show cause why a preliminary injunction freezing his assets should not be entered.[1]

On March 27, 1998 the district court held a hearing on the government's motion for a preliminary injunction and entered the preliminary injunction that is the subject of this appeal. In the most general terms, the injunction provided as follows. Part I prohibited Cohen (and his business associates) from dissipating assets in which he had a direct or indirect legal or beneficial interest and required him to receive court permission for transactions not in the ordinary course.[2] In addition, Part II required that a copy of the preliminary injunction be served on all persons or entities holding or controlling funds in which Cohen had a legal or beneficial interest. Part III ordered a magistrate judge to monitor compliance with the preliminary injunction. Finally, Part IV required that Cohen submit financial statements to a magistrate judge within ten days and update those statements periodically.

Cohen filed a motion for reconsideration and a motion to stay the preliminary injunction pending appeal. The district court denied both motions.[3] Subsequently, Cohen filed a Notice of Appeal. On April 9, 1998, a judge of this court, acting pursuant to Local Rule 8, granted a partial stay of the preliminary injunction pending this appeal. The court granted the partial stay with respect to Part II of the injunction, finding it unnecessarily burdensome.

We review the grant of a preliminary injunction under the standard of abuse of discretion. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 358 (4th Cir.1991). "[T]here is, of course, the possibility that the court below has either failed to exercise its

1. The show cause order erroneously shifted the burden of proof to Cohen.

2. The preliminary injunction did not apply to: (1) "expenditures of personal funds for ordinary and reasonable living expenses, in an amount that does not exceed ten thousand ($10,000) dollars during any calendar month;" (2) "expenditures in the ordinary-course-of-business arising from bona fide contractual obligations with third parties incurred prior to the commencement of this action;" (3) "bona fide ordinary-course-of-

business transactions for value of five thousand ($5,000) dollars or less;" (4) "expenditure of funds for costs reasonably incurred in complying with the Preliminary Injunction;" (5) "reasonable attorneys fees and litigation costs in defense on this action;" and (6) "any other expenditure authorized by the court."

3. At present the district court has not entered any order against Cohen on the merits of the government's claims. ·

discretion in some respect ... or else exercised it counter to established equitable principles. A judge's discretion is not boundless and must be exercised within the applicable rules of law or equity." *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir.1977) (citations omitted).

In its opinion, the district court explained that the preliminary injunction was proper because the government had presented evidence that met the balance of hardships test this court set forth in *Blackwelder*, 550 F.2d at 189. The district court asserted that it had the power to enter the preliminary injunction on several grounds: (1) the inherent equitable authority of the court; (2) principles of ancillary jurisdiction; (3) Fed. R.Civ.P. 65; (4) 28 U.S.C. § 1651(a); and (5) 18 U.S.C. § 1345(a)(2)(B).[4] The district court did not claim any one of the five sources for its authority. Rather, the court claimed that taken together the five sources "provided the court with authority to enter an order to protect against the dissipation of assets during the pendency of this action." We review each of these sources.

■ We start by considering the inherent equitable powers of a district court to enter the injunction freezing Cohen's assets. In *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), the Supreme Court invalidated an injunction freezing the assets of various corporate defendants. In the underlying action, the government sought to restrain the corporate defendants from actions and conduct that violated the Sherman Act and the Wilson Tariff Act. In reversing the decree that granted the injunction, the Court held that the injunction "is, and can only be, sustained as a method of providing security for compliance with other process which conceivably may be issued for satisfaction of a money judgment for contempt." *De Beers*, 325 U.S. at 220, 65 S.Ct. 1130. Thus, the Court held that a district court could not enter such a pre-judgment injunction enjoining a defendant from disposing of his assets. As the

Court observed, had it affirmed the grant of the injunction,

> [e]very suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree.

*De Beers*, 325 U.S. at 222, 65 S.Ct. 1130.

Although we have not had occasion to apply *De Beers*, several other circuits have. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir.1990) (distinguishing *De Beers*); *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507 (11th Cir. 1994); *Reebok Int'l Ltd. v. Marnatech Enter., Inc.*, 970 F.2d 552 (9th Cir.1992) (distinguishing *De Beers*); *In re Fredeman Litigation*, 843 F.2d 821 (5th Cir.1988); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 560 (5th Cir.1987); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir.1986) (distinguishing *De Beers*); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982). Although the Fifth, Sixth and Eleventh Circuits followed *De Beers*, the First, Third and Ninth Circuits found distinctions between it and the case with which they were confronted. Having reviewed these cases, we are of opinion that the case at hand is not significantly different from *De Beers*. Accordingly, the district court erred in relying upon its inherent equitable powers to enter a pre-judgment injunction freezing Cohen's assets.

■ We next consider ancillary jurisdiction as a source of power for the district court to enter the preliminary injunction at issue. The district court invoked ancillary jurisdiction, but the application of that theory was not explained. We interpret ancillary jurisdiction to refer to the power of a federal court to address, in a federal question case, state law claims that "derive from a common nucleus of operative fact." *United Mine*

---

**4.** The district court listed 18 U.S.C. § 1345(a)(2)(B) as one of its sources of power. We interpret that reference to mean (a)(2)(A) because subsection (a)(2)(A) refers to injunctions whereas subsection (a)(2)(B) refers to restraining orders.

*Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). That power, expressed in *Gibbs,* has been codified and is now referred to as supplemental jurisdiction. It is vested in the district courts by statute and is defined as "... other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III...." 28 U.S.C. § 1367(a). But ancillary or supplemental jurisdiction confers no authority on a district court to enter a prejudgment order enjoining a defendant from disposing of his property which may be used to satisfy a judgment not yet obtained.

Next, Federal Rule of Civil Procedure 65 is not a source of power for a district court to enter an injunction. Rather, it regulates the issuance of injunctions otherwise authorized. *Kemp v. Peterson,* 940 F.2d 110 (4th Cir.1991).

Section 1651(a) of Title 28 of the United States Code, the All Writs Act, provides: "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Although the language of that Act refers to writs issued in aid of jurisdiction, courts have held that "where an injunction is proper in order to protect or effectuate the judgments of a federal court, it is within that court's power to issue the injunction under the All Writs Act." *Ward v. Pennsylvania New York Cent. Transp. Co.,* 456 F.2d 1046, 1048 (2d Cir.1972). Section 1651(a), however, is not relevant to an order freezing assets unless such order is in aid of an injunction which had been otherwise issued. Consequently, the All Writs Act is inapplicable as a source of authority in the present case.

We next consider 18 U.S.C. § 1345(a)(2)(A). In that statute, Congress has explicitly empowered district courts to enter injunctions to freeze the assets of a person guilty of banking law violations. It provides as follows:

> If a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of a banking law violation ... or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court to enjoin such alienation or disposition of property.

18 U.S.C. § 1345(a)(2)(A). Thus, § 1345(a)(2)(A) is relevant to and may apply to the government's claim that Cohen has disposed of or intends to dispose of property that is obtained as a result of or traceable to past violations of banking laws.

Although F.R.C.P. 64 was not mentioned by the district court, it regulates an alternative means for preserving assets. See *Rosen v. Cascade Int'l, Inc.,* 21 F.3d 1520 (11th Cir.1994); *Mitsubishi,* 14 F.3d at 1521; *Dixon,* 835 F.2d at 560; *USACO Coal,* 689 F.2d at 97; but see *FTC v. H.N. Singer, Inc.,* 668 F.2d 1107, 1112 (9th Cir.1982). Rule 64 provides for attachment, "under the circumstances and in the manner provided by the law of the state in which the district court is held." Fed. R. Civ. Pro. 64. "Rule 64 speaks to provisional remedies prior to judgment," 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2931 at 5, which is the precise relief sought in the present case. Those provisional remedies include "arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action." Fed. R. Civ. Pro. 64; 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2932.

Accordingly, the law to be applied under Rule 64 is the law of attachment in Virginia. Attachments are available in equity in Virginia. *Winfree v. Mann,* 154 Va. 683, 153 S.E. 837 (1930); see *Liles Equity Pleading and Practice,* 1952, § 444. Virginia law provides for attachment, among other reasons, upon a showing that the defendant "[i]s converting, is about to convert, or has converted his property of whatever kind, or some part thereof, into money, securities or evidences of debt with intent to hinder, delay, or defraud his creditors." See Va.Code 8.01–534(A)(4)(5)(6) and § 534(B). It is seen

at once that the Virginia attachment statute grants broader authority than the federal banking statute previously mentioned, 18 U.S.C. § 1345(a)(2)(A).

We are left with the conclusion that authority for freezing assets of a defendant exists either under 18 U.S.C. § 1345(a)(2)(A) as well as under Virginia equity law and attachment procedure, see Virginia Code § 8.01–534. But the factual basis for the injunction or attachment order, whatever the same may be called, must be set forth with particularity in accordance with Rule 65.

In that respect, the decision of the district court does not address the factual requirements of § 1345(a)(2)(A). While the opinion of the district court may be said to have complied with the procedure of *Kemp v. Peterson*, 940 F.2d 110, 114 (4th Cir.1991), requiring a showing of fraud or mismanagement or the like, no specific fact has been found and we are unable to discern with sufficient degree of precision the factual basis underlying the district court's order. For example, it found that "Cohen has engaged in a pattern of fraudulent behavior highlighted by false statements, self-dealing, and willingness and ability to secretly manipulate financial transactions for unlawful purposes."

But that statement finds conclusions only, damning as they may be, and no statement which is false has been found as a fact by the district court, nor has any incident of self-dealing, nor has any incident of secret manipulation of a financial transaction for an unlawful purpose. It may be that facts are shown in the multitude of exhibits and affidavits filed in this case which would support issuing an injunction under § 1345(a)(2)(A) or an attachment in equity under Virginia Code 8.01–534, but those facts have not been found by the district court. We emphasize, as we did in *Kemp*, 940 F.2d at 114, that the

district court must make factual findings to support issuing the order appealed from.

Accordingly, as we did in *Kemp*,[5] we will not presently vacate the preliminary injunction but remand this case so that the district court may have opportunity to make the fact findings required. On remand, the district court may require other evidence and conduct such hearings as it may deem appropriate and will enter, within 60 days after the filing of our mandate herein, its further order with respect to whether or not the property of Cohen is seized pending the disposition of the underlying case. Otherwise, the order of the district court freezing Cohen's assets will be vacated without further proceedings.

*REMANDED WITH INSTRUCTIONS.*

---

5. *Kemp v. Peterson*, 940 F.2d 110 (4th Cir.1991), was a case in which the district court had issued a preliminary injunction enjoining future violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, *et seq.* It also froze individual assets of the defendants as security for the claims and ordered placed in an escrow account, pending determination of liability, proceeds from the sale of lots. The injunction, which was specifically authorized under § 1714(a) of the statute, was not appealed from, but the freeze order

was. We held that, upon showing of fraud, mismanagement or other reason to believe that "the assets would be depleted or otherwise become unavailable," the freeze order was justified but that the district court had not made sufficient factual findings to support that conclusion. *We note, especially, that the requirement with respect to the assets being depleted or otherwise becoming unavailable is not different in any significant way from the requirement of Virginia Code § 8.01–534 for a pre-judgment attachment.*