**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MELVIN JOSEPH LONG; MARY ANN
LONG,

*Plaintiffs-Appellants,*

and

KEAE CROWLEY; ANNA MARIE
BARTLEY; WON GIL CHOI; HYUNG
JAE KIL; HONG Y. KIM; YONG KYO
SHIN; JUNE K. KIL; SARAH
KLAWITTER MARKS; HANNA G.
WANG; SONCHA LEE; EDWARD
CROWLEY; JAMES F. DRONSFIELD,

*Plaintiffs,*

v.

MERRIFIELD TOWN CENTER LIMITED
PARTNERSHIP, a Virginia limited
partnership,

*Defendant-Appellee.*

No. 08-2371

ANNA MARIE BARTLEY; WON GIL
CHOI; HONG Y. KIM; YONG KYO
SHIN; SARAH KLAWITTER MARKS;
HANNA G. WANG; SONCHA LEE;
KEAE CROWLEY; EDWARD CROWLEY;
JAMES F. DRONSFIELD,

   *Plaintiffs-Appellants,*

  and

HYUNG JAE KIL; JUNE K. KIL;
MELVIN JOSEPH LONG; MARY ANN
LONG,

   *Plaintiffs,*

  v.

MERRIFIELD TOWN CENTER
LIMITED PARTNERSHIP, a Virginia
limited partnership,

   *Defendant-Appellee.*

No. 09-1020

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:08-cv-00145-GBL-JFA)

Argued: May 14, 2010

Decided: July 13, 2010

Before WILKINSON, NIEMEYER, and SHEDD,
Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

---

**COUNSEL**

John Connell Altmiller, Jr., PESNER KAWAMOTO CON-WAY, PLC, McLean, Virginia, for Appellants. Edward W. Cameron, CAMERON MCEVOY, PLLC, Fairfax, Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Melvin and Mary Long, along with several other individuals, who signed contracts to purchase eight condominiums in the 279-unit condominium complex known as Vantage at Merrifield Town Center in Falls Church, Virginia, commenced these actions against the developer, alleging violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA") (pronounced, perhaps, "ills-fi-da"), 15 U.S.C. § 1701 *et seq*., and seeking to rescind their contracts and obtain refunds of their deposits.

The developer, Merrifield Town Center Limited Partnership ("Merrifield"), filed a motion to dismiss on the ground that the sales contracts for units in the Vantage condominium complex were exempt from ILSFDA's requirements under two exemptions that, when combined, covered all 279 units. Merrifield contended that the sales contracts for 182 of the lots or units, which promised delivery of condominiums within two years, were allegedly exempted under ILSFDA's "Improved Lot Exemption," which exempts from ILSFDA sales contracts that obligate the seller to construct the prom-

ised condominiums within "a period of two years." *See id.* § 1702(a)(2). And the sales contracts for the remaining 97 units, which promised delivery of condominiums within three years, were allegedly exempted under ILSFDA's "100 Lot Exemption," which exempts from ILSFDA transactions involving developments containing fewer than 100 lots *that are not otherwise exempt* under the Act. *See* 15 U.S.C. § 1702(b)(1). The plaintiffs responded, arguing that in order for the 100 Lot Exemption to apply, the remaining 182 units had to be exempt under the Improved Lot Exemption and that, in this case, the contracts for the sale of those units did not satisfy the requirements of § 1702(a)(2) because they did not obligate Merrifield to deliver the condominiums within two years from the date that *each purchaser signed* the purchase contract.

The district court granted Merrifield's motion to dismiss based on the 100 Lot Exemption. But it did so without discussing whether the other sales contracts in the development were indeed exempt under the Improved Lot Exemption. The plaintiffs' appeal challenges Merrifield's qualification for both exemptions, as the first is dependent on the second.

We hold that to qualify for the Improved Lot Exemption under § 1702(a)(2), which provides that a sales contract must "obligate the seller . . . to erect a [residential, commercial, condominium, or industrial] building thereon within a period of two years," the sales contract must obligate the seller to build and deliver the required structure within two years of the date that *the purchaser signs* the contract and incurs obligations, rather than within two years of the date that *the seller signs* the contract. Because the sales contracts for the 182 condominiums did not obligate Merrifield to construct the condominiums within two years of the date that the purchasers signed the contracts and incurred obligations, those contracts were not exempt from regulation under ILSFDA. And because those 182 sales contracts were not exempt, the 100 Lot Exemption could not be relied on to exempt the remaining

condominiums because there were more than 100 lots or units in the development that were not exempt. Accordingly, we reverse the district court's order of September 30, 2008, granting Merrifield's motion to dismiss and remand for further proceedings.

I

In selling the lots and unbuilt condominium units at the Vantage condominium complex, Merrifield offered two types of sales contracts. One type, which covered 97 units, promised construction and delivery of the condominium unit *within 36 months* of Merrifield's "ratification" of the sales contract, and the other type, which covered 182 condominium units, promised construction and delivery of the condominium unit *within 24 months* of Merrifield's "ratification" of the sales contract. All of the plaintiffs in this case signed 36-month contracts during June and July of 2005, and Merrifield ratified those contracts by signing them from one to three months later.

Other than the promised delivery date, all of the sales contracts at the Vantage condominium complex were substantially similar. Each contract provided that it "[was] made on [the date of purchaser's signing] by and between [purchaser] and [Merrifield]." Each contract required that the purchaser provide a deposit at the time the purchaser signed the contract equal to 5% of the purchase price if the purchaser intended to occupy the unit, or 10% if the purchaser was an investor who intended to sell or lease the unit, and a second, larger deposit within 180 days of the purchaser's signing. Each contract also obligated the purchaser to make a written loan application within seven days "of the date Purchaser signs" the contract and to obtain approval of the financing within two weeks "from the date Purchaser signs" the contract. If the purchaser intended to buy the condominium without obtaining a loan, the purchaser was obligated to produce documentation within five days "of the date Purchaser signs," showing its ability to

pay. Finally, each contract provided that if the purchaser "breaches or defaults under this Agreement, the Agreement Deposit and the Options Deposit will be retained by [Merrifield] as liquidated damages and not as a penalty, in which event Purchaser and [Merrifield] shall be relieved from further liability hereunder." The default clause also authorized Merrifield, "[i]n the alternative," to retain the initial deposit and the options deposit and to pursue such other legal or equitable remedies as it may have.

Each contract anticipated that Merrifield would, at some later date, "ratif[y]" the sales contract signed by the purchaser and provided that the contract was not binding on Merrifield until such ratification. In the case of the eight contracts at issue in this case, Merrifield ratified the contracts from one to three months after the purchaser signed them.

Due to a series of disagreements, none of the contracts in this case went to settlement. Rather, the purchasers commenced these actions under ILSFDA and state law, seeking rescission and return of their deposits by way of rescission or damages. Merrifield filed a motion to dismiss the complaints under Federal Rule of Civil Procedure 12(b)(6), claiming that the 182 24-month contracts were exempt from ILSFDA's requirements under the Improved Lot Exemption, 15 U.S.C. § 1702(a)(2), as they obligated Merrifield to construct the condominiums within two years of Merrifield's ratification of the contracts. Because 182 units were exempt, the remaining 97 36-month contracts, which included plaintiffs' contracts, were exempt under the 100 Lot Exemption, 15 U.S.C. § 1702(b)(1). Merrifield also addressed the plaintiffs' state-law claims in its motion to dismiss.

The district court granted Merrifield's motion, reasoning that because it was undisputed that Merrifield was selling only 97 units under the 36-month contracts, the 100 Lot Exemption applied to them, warranting dismissal of the ILS-FDA claims. The district court did not, however, address the

question of whether the Improved Lot Exemption applied to the 182 24-month contracts, nor did it discuss the fact that the condominium complex, when combining the 24-month contracts and the 36-month contracts, contained more than 100 units. The district court also dismissed the state-law claims, a ruling that the plaintiffs do not appeal.

The plaintiffs filed a timely motion to alter or amend the district court's judgment, arguing that the district court had erred by applying the 100 Lot Exemption without considering the antecedent question of whether the 24-month contracts were exempt under the Improved Lot Exemption. They argued that case law, as well as regulations of the Department of Housing and Urban Development ("HUD"), provided that the Improved Lot Exemption requires that a seller be obligated to build the structure within 24 months of *when the purchaser signs* the sales contract and incurs obligations. The plaintiffs argued that the 24-month contracts in this case failed to meet that requirement because they did not require Merrifield to build and deliver completed condominiums until two years after it *ratified* the contracts. Because the 182 24-month contracts were not exempt, the plaintiffs argued, the plaintiffs' 36-month contracts also were not exempt, as the total number of non-exempt units in the development exceeded 100.

The district court denied the plaintiffs' motion to alter or amend the judgment, and this appeal followed.

II

Because Vantage at Merrifield Town Center was a condominium complex that contained a total number of 279 lots or units, only if the 182 units sold with 24-month contracts were exempt under the Improved Lot Exemption of 15 U.S.C. § 1702(a)(2) could the 97 units sold with 36-month contracts be exempt under the 100 Lot Exemption, because only then would the development contain fewer than 100 otherwise

non-exempt units. *See* 15 U.S.C. § 1702(b)(1) (exempting "the sale or lease of lots in a subdivision containing fewer than one hundred lots *which are not exempt under [§ 1702(a)]*") (emphasis added)). If, on the other hand, the 24-month contracts were not exempt under the Improved Lot Exemption, the 36-month contracts would not be exempt under the 100 Lot Exemption, as the development would then contain more than 100 otherwise non-exempt units.

The district court skipped a step in its analysis in determining that the 100 Lot Exemption applied to the 36-month contracts by failing to consider the antecedent question of whether the Improved Lot Exemption applied to the 24-month contracts. It failed to recognize that to determine whether the plaintiffs' contracts with Merrifield were exempt under the 100 Lot Exemption, it necessarily had to address whether the 24-month contracts were exempt under the Improved Lot Exemption.

Thus, the issue now presented is whether the 24-month contracts are exempt as "obligat[ing] the seller or lessor to erect . . . a building [on the lot] *within a period of two years*." 15 U.S.C. § 1702(a)(2) (emphasis added). And to resolve that issue, we must determine when the Improved Lot Exemption's two-year period begins to run. The plaintiffs argue that the two-year period during which the developer must erect and deliver a building begins to run from the time that the purchasers sign the sales contracts and incur obligations. Merrifield argues that the time period begins to run only when both parties have signed the contracts.

Because § 1702(a)(2) is ambiguous in this regard, we must ascertain the interpretation of the statute that best implements Congress' intent and gives effect to the statute's purpose. *See Adler v. Comm'r*, 86 F.3d 378, 380-81 (4th Cir. 1996); *see also Food Town Stores, Inc. v. EEOC*, 708 F.2d 920, 924 (4th Cir. 1983) ("A statute must be interpreted to give it the single, most harmonious, comprehensive meaning possible in light of

the legislative policy and purpose"); *Berry v. Atl. Greyhound Lines, Inc.*, 114 F.2d 255, 257-58 (4th Cir. 1940) ("A statute should . . . be interpreted both as a whole and also in the light of its general scope, tenor and purpose").

ILSFDA is a remedial statute enacted to prevent interstate land fraud and to protect unsuspecting and ill-informed investors from buying undesirable land. *See Kemp v. Peterson*, 940 F.2d 110, 112 (4th Cir. 1991) ("The Act is designed to prevent fraud and deception in the sale of undeveloped land"); *Ahn v. Merrifield Center Ltd. P'ship*, 584 F. Supp. 2d 848, 853 (E.D. Va. 2008). To this end, the statute requires that specified disclosures be made prior to a purchaser's execution of a sales contract. *See Ahn*, 584 F. Supp. 2d at 853. *See generally* Conf. Rep. 90-1785 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 3053, 3066 (describing purposes of disclosure requirements as preventing material misrepresentations by sellers). These disclosure requirements are designed to protect purchasers by ensuring that "'prior to purchasing certain types of real estate, a buyer [is] apprised of the information needed to insure an informed decision.'" *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (quoting *Cost Control Mktg. & Mgmt., Inc. v. Pierce*, 848 F.2d 47, 48 (3d Cir. 1988)).

Congress did not, however, intend that ILSFDA regulate all sales of real property, and, accordingly, it provided a list of specific exemptions. *See* 15 U.S.C. § 1702(a)-(b). Because ILSFDA is a remedial statute, however, we construe its exemptions narrowly. *See Olsen v. Lake Country, Inc.*, 955 F.2d 203, 206 (4th Cir. 1991).

The Improved Lot Exemption of § 1702(a)(2) recognizes a limit to the statute's protections in circumstances where a purchaser receives assurances that the lot he is purchasing either already contains a building or structure or will contain one within 24 months of the purchase date. The guarantee of construction within a reasonably short time obviates some of the concern that the purchaser may have about being hoodwinked

into buying an uninhabitable lot or a lot that will not have the value anticipated by the contract. Construing the Improved Lot Exemption narrowly will thus best serve ILSFDA's purposes. Thus, a sales contract, which requires a purchaser immediately to undertake obligations and pay money to the seller but permits the seller at its discretion to postpone construction and delivery of the building or structure, would undermine the purposes of ILSFDA.

In this case, if we were to construe § 1702(a)(2) as Merrifield would have us do—that is, to find that the exemption applies even if Merrifield's obligation to build and deliver condominiums extends to an indefinite date defined by two years after it elects to *ratify* the contract—we would be expanding the exemption to such an extent that the statutory purposes could be frustrated or entirely defeated. The contract purchasers would be incurring obligations and expenses on the date they sign the contract, but the seller's obligation to build would extend to an indefinite period determined by when the seller decides to ratify it. Such a scenario would narrow significantly the scope of transactions protected by ILSFDA, frustrating Congress' purpose. *See Ahn*, 584 F. Supp. 2d at 855 ("To confer on sellers the power to extend the two-year period by delaying 'ratification'—perhaps indefinitely—would allow sellers to engage in an end-run around ILSFDA's protections, a result plainly contrary to Congress's carefully crafted scheme to protect property purchasers"). Accordingly, the narrower construction of § 1702(a)(2), as advanced by the contract purchasers in this case—that the two-year statutory obligation begins when the purchaser signs the sales contract —better serves the statute's purposes.

This interpretation—that the time within which sellers are obligated to build runs from the purchaser's signing and incurring obligations—also results in a systematic and coherent scheme that fits the precontract protections given by ILSFDA for non-exempt sales. For instance, in non-exempt sales, a printed property report must be provided to "the purchaser

or lessee *in advance of the signing* of any contract or agreement *by such purchaser*." 15 U.S.C. § 1703(a)(1)(B) (emphasis added). In the event that such disclosures are not made, the purchaser may revoke the contract within two years of the date of the *purchaser's signing*. *See id.* § 1703(c). This structure of coverage thus meshes well with the exemption so long as the exemption is construed narrowly—*i.e.*, such that the date of the purchaser's signing and incurring obligations, not the date when the seller chooses to sign, begins the time period in which the contract must oblige the seller to build and deliver a condominium.

Regulations promulgated by HUD also support the interpretation that the date of the purchaser's signing commences the period within which the seller must build the promised structure. They provide, for example, that a seller may include a "presale clause conditioning the sale of a unit on a certain percentage of sales of other units . . . if it is legally binding on the parties and is for a period not to exceed 180 days. *However, the 180-day provision cannot extend the two-year period for performance. The permissible 180 days is calculated from the date the first purchaser signs a sales contract* . . . ." 24 C.F.R. § 1710.5 (emphasis added). This provision recognizes that presale conditions are permissible, but explains that such conditions become enforceable when the purchaser signs, even if the seller has not signed, and that they cannot be used to extend the date for *the seller's* performance beyond two years after the *purchaser signs*. And, as with other parts of the statute, this regulation begins the applicable time period *on the date that the purchaser signs*. The operation of this regulation is consistent with a more general understanding that the relevant starting point for ILSFDA's regulation and exemption of contracts is the date of the purchaser's signing. This regulation also highlights the importance of the seller's obligation to construct within two years of the purchaser's signing.

In addition, HUD has issued interpretive guidelines that are specifically applicable to the Improved Lot Exemption of

§ 1702(a)(2). Its guidelines state, "The two-year period normally begins on *the date the purchaser signs* the sales contract." Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg. 13,601, 13,603 (March 27, 1996) (emphasis added). While these guidelines are not binding, they are entitled to "some deference" in interpreting the relevant statute. *See Reno v. Koray*, 515 U.S. 50, 61 (1995); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Merrifield suggests that the use of the word "normally" in the guidelines implies that the date of the purchaser's signing is not a mandatory start date for the two-year term but simply a commonly understood one. But this fails to recognize that the guidelines also state, "The contract *must not allow nonperformance by the seller at the seller's discretion. . . .* [A]s a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control." 61 Fed. Reg. at 13,603 (emphasis added). Despite the guidelines' prohibition, the 24-month sales contracts for condominiums at the Vantage condominium complex afforded Merrifield unfettered discretion to delay its obligation to build. Thus, while the contracts required purchasers to give deposits at the time they signed and promptly thereafter to undertake to secure financing, they did not begin Merrifield's period of performance until Merrifield chose to ratify the contracts, a date that fell within its sole discretion.

Finally, and most immediately important, Merrifield sought an advisory opinion from HUD, under 24 C.F.R. § 1710.17, as to whether the Improved Lot Exemption and the 100 Lot Exemption would apply to exempt both the 24-month and 36-month contracts in this case. HUD responded by letter dated November 3, 2005, and advised Merrifield that the Improved Lot Exemption would apply to the 24-month contracts and, as a result, the 100 Lot Exemption would apply to the 36-month contracts. But the letter was explicitly predicated on HUD's

understanding that construction of the condominiums would take place "within two years from the date *the purchaser signs* the Condominium Purchase Contract," not within two years of *ratification*, as the contracts actually provided. (Emphasis added). Therefore, rather than indicating that the Improved Lot Exemption should apply to Merrifield's 24-month contracts, the HUD opinion actually indicates that it should not apply.

Notwithstanding the statute, regulations, and guidelines, Merrifield advances several contract-based arguments as to why the Improved Lot Exemption's two-year period begins to run only upon the date that both parties have signed the contract. First, it argues that the Virginia statute of frauds, which provides that no contract for the sale of real property exists until the contract is written and signed by the parties, requires a conclusion that no contract existed until both parties signed. It reasons, therefore, that § 1702(a)(2)'s two-year period for constructing condominiums must begin when it ratifies the contracts. The statute of frauds, however, requires a writing and signature only "by the party to be charged." Va. Code. Ann. § 11-2. Thus, in this case, the sales contracts became binding against the purchasers upon the purchasers' signing.

In the same vein, Merrifield also argues that when the purchasers signed the sales contracts, they were merely offering to enter into a contract—an offer that could be accepted or rejected by Merrifield. It asserts that the provisions for deposits and financing were simply components of the offer. But this argument fails to recognize the import of the deposit and financing terms. The contracts provided that upon signing, each purchaser had to pay Merrifield an initial deposit and, within a short period, a second deposit, *regardless of when Merrifield ratified the contract*. The purchasers were also required, within a few days of signing, to obtain financing, again regardless of when Merrifield ratified the contract. Finally, the contract contained default provisions under which the purchasers could lose some deposits as liquidated dam-

ages, again before Merrifield ratified the contract. Moreover, at a more general level, the contract's use of the term "ratification" by Merrifield implied Merrifield's validation of an agreement that had already been reached.

Finally, in support of its position, Merrifield relies on the Sixth Circuit's decision in *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1066-67 (6th Cir. 1995), which it describes as holding that the two-year period must be measured from the time the contract was executed by both parties. Instead, however, the Sixth Circuit held that § 1702(a)(2)'s two-year period began running on the date an interim escrow account was closed, "as it was only then that the parties became legally bound" under the contract. The *Becherer* court thus did not face a factual circumstance like the one in this case, where the obligations of the purchasers were created before the seller's period for performance commenced. *See id.* at 1066. Indeed, consistent with the conclusion that we reach in this case, the Sixth Circuit recognized, in dictum, that the HUD regulations provide that "'the contract must not allow nonperformance by the seller at the seller's discretion.'" *Id.* at 1067 (quoting 24 C.F.R. Pt. 1710, App. A. subpt. IV(b)).

III

In sum, we conclude that the Improved Lot Exemption of 15 U.S.C. § 1702(a)(2) requires that a sales contract, to be exempt, must oblige the seller to build and deliver the promised building within two years after the purchaser signs the contract and incurs obligations. Because the 24-month sales contracts in this case did not require Merrifield to construct and deliver the subject condominiums within two years of when the purchasers signed the contracts and incurred obligations, but rather obligated it to complete the construction within two years of when it, in its discretion, chose to ratify the contracts, the contracts were not exempt under § 1702(a)(2). With this conclusion, the 100 Lot Exemption

also could not have applied to the plaintiffs' contracts because there were more than 100 *non-exempt* units. *See* 15 U.S.C. § 1702(b)(1).

Accordingly, we reverse the district court's order dismissing the plaintiffs' ILSFDA claims and remand for further proceedings.

*REVERSED AND REMANDED*